Belknap County Probate Court
No. 79-266

*In re* MICHAEL FIELD

March 13, 1980

*Peter Makris*, of Laconia (*Stephen J. Neubeck* orally), for Michael Field.

*Thomas D. Rath,* attorney general (*Betsy S. Westgate,* attorney, orally), for the State.

KING, J. This is an appeal pursuant to RSA ch. 567-A (Supp. 1977) from an order of the Belknap County Probate Court (*Burlingame,* J.) issued on June 18, 1979, in response to a petition for the involuntary commitment of Michael Field to the New Hampshire Hospital in accordance with RSA 135-B:27, :28.

The petition was filed against Michael Field (hereinafter Michael) on May 14, 1979, by his mother, Patricia Field. A hearing on the petition was held in probate court on June 5, 1979. At that time, Michael sought to have the hearing bifurcated and to have the results of the psychiatric examination required by RSA 135-B:32 quashed. The court denied these motions and Michael duly excepted. The court ordered Michael admitted to the New Hampshire Hospital for in-patient treatment on an involuntary basis for a period of nine months pursuant to RSA ch. 135-B. Michael appeals from the denial of his motions. The case was reserved and transferred to this court.

The first issue is whether a bifurcated hearing separating proof of specific alleged acts from proof of mental illness and dangerousness is required in an involuntary civil commitment proceeding under RSA ch. 135-B.

The New Hampshire involuntary civil commitment statute, RSA ch. 135-B, does not provide for, or refer to, a bifurcated hearing. Although no case has required or discussed such a hearing in connection with an involuntary civil commitment proceeding, Michael argues that he is entitled to a bifurcated hearing by analogy to this court's decision in *Novosel v. Helgemoe,* 118 N.H. 115, 384 A.2d 124 (1978).

Michael argues that bifurcation was necessary because he was prejudiced in his ability to defend against his commitment when evidence concerning his behavior, psychiatric history and dangerous tendencies was intermingled with proof of specific acts to demonstrate dangerousness. Michael concludes that had the State been required to establish sufficient threshold proof that he committed the acts alleged in the petition, absent the influence of evidence of mental illness and inappropriate behavior, the court would not have ordered involuntary admission to New Hampshire Hospital because the evidence introduced was insufficient to prove that he committed specific acts. Michael claims therefore that failure to bifurcate was substantially prejudicial and an abuse of

the court's discretion tantamount to a denial of his constitutional rights to due process and equal protection of the laws.

■■ Michael's reliance on *Novosel* is misplaced. The focus of a criminal trial is to determine whether the defendant is guilty of committing specified acts. Although testimony concerning commission of acts is necessary to prove dangerous mental illness, acts which demonstrate the mental condition, unlike acts in a criminal proceeding, are not the focus of the inquiry, but are merely evidence bearing on the issue of dangerousness. In an involuntary commitment proceeding, the petitioner must prove the existence of mental illness and must produce evidence of a dangerous mental condition. Certainly, it is illogical to claim that introduction of evidence concerning Michael's mental state, dangerous tendencies and unorthodox behavior prejudices his case where his mental condition is the specific issue. We are not persuaded that we should require a bifurcated hearing in an involuntary civil commitment proceeding under RSA ch. 135-B.

The second issue is whether the sixth amendment to the United States Constitution requires an examinee's counsel's presence at a psychiatric examination conducted pursuant to RSA ch. 135-B. Although the question of the right to counsel at a statutorily required psychiatric examination has been addressed by various courts, virtually all refuse to hold that a right to counsel at that stage is constitutionally mandated. *See, e.g., Lynch v. Baxley,* 386 F. Supp. 378, 389, n.5 (M.D. Ala. 1974); *Lessard v. Schmidt,* 349 F. Supp. 1078, 1099–1100 (E.D. Wis. 1972), *vacated and remanded on other grounds,* 421 U.S. 957 (1975), *aff'd on rehearing,* 413 F. Supp. 1318 (E.D. Wis. 1976).

The fundamental objection to requiring, or even permitting, the presence of counsel is that there is a considerable likelihood that his presence would unduly interfere with the interview. *See Developments in the Law—Civil Commitment of the Mentally Ill,* 87 HARV. L. REV. 1190, 1286–87, n.130 (1974). *See also Lynch v. Baxley supra.* Due to the intimate nature of the psychiatric examination, the presence of a third party in a legal and non-medical capacity severely limits its efficacy. *See Hollis v. Smith,* 571 F.2d 685 (2d Cir. 1978); *United States v. Cohen,* 530 F.2d 43 (5th Cir. 1976); *United States v. Bohle,* 445 F.2d 54 (7th Cir. 1971).

It is difficult to imagine anything more stultifying to a psychiatrist, as dependent as he is upon the cooperation

of his patient, than the presence of a lawyer objecting to the psychiatrist's questions and advising his client not to answer this question and that.

*Tippett v. State of Maryland*, 436 F.2d 1153, 1158 (4th Cir. 1971), *cert. dismissed sub nom, Murel v. Baltimore City Criminal Court*, 407 U.S. 355 (1972).

Michael also argues that he was foreclosed from conducting an effective cross-examination since counsel had no opportunity to observe the psychiatrist's diagnostic techniques and methodology. Counsel, however, has the same opportunity to question the psychiatrists and psychologists about the procedures and techniques used in arriving at an opinion as they have in questioning any other expert.

■■ We find that, as in this instance, where the examinee is represented by counsel who saw all relevant documents, was given the opportunity to present his own psychiatric testimony and extensively cross-examined the examining psychiatrist's basis for recommending involuntary admission, the examinee was not foreclosed from effective assistance of counsel. While we would not object to recording the examination, we hold that presence of counsel during psychiatric examination is not so materially beneficial as to outweigh the interests of the State in meaningful consultation. *See Lessard v. Schmidt, supra* at 1099–1100.

Michael next argues that his fifth amendment privilege against self-incrimination is violated if he is compelled to submit to a psychiatric evaluation and the information so obtained is used against him. Although this right is not restricted to criminal trials, *In re Fay G.*, 120 N.H. 153, 412 A.2d 1012 (1980), recognizing the privilege in this context

> would make almost any commitment impossible, and would make the proceedings so burdensome that medical conclusions . . . would be inadmissible. While complete justification from any deviation from normal civil and criminal due process standards must be demanded, it is unreasonable to hold that the State can never act in the best interest of an individual.

*State ex rel. Hawks v. Lazaro*, 202 S.E.2d 109, 126 (W. Va. 1974).

■■ We hold that the fifth amendment privilege against self-

incrimination does not protect against giving evidence relating to civil commitments. So long as those proceedings do not seek to elicit evidence which may result in any criminal prosecution, the privilege is not involved. *In re Beverly*, 342 So. 2d 481, 488–90 (Fla. 1977). We also hold that any admissions, information or evidence divulged by the person being examined shall be excluded from any subsequent criminal prosecution or sentencing proceeding. *See id.* at 489. This protects a person's right against self-incrimination and promotes open disclosure to examining psychiatrists and psychologists.

Michael asserts that the physician-patient privilege established by RSA 329:26 (Supp. 1979) precludes prior medical and mental records compiled by Michael's treating physician to be used by the court-appointed psychiatrist in forming his opinion. We disagree.

█ The principle is clearly established that if proceedings are civil and guilt is not in issue, and if the inquiry in question relies primarily on medical evidence, the policy of permitting full disclosure to permit treatment prevails and the privilege must yield. *State v. Kupchun*, 117 N.H. 412, 373 A.2d 1325 (1977); *see Sevigny v. Burns*, 108 N.H. 95, 227 A.2d 775 (1967); *In re Miller*, 98 N.H. 107, 95 A.2d 116 (1953). *But see State v. O'Neil*, 274 Or. 59, 545 P.2d 97 (1976). It would vitiate the purpose of the statutorily required psychiatric examination if the privilege were found applicable.

*Appeal dismissed.*

All concurred.