Merrimack County Probate Court
No. 80-084

THE STATE OF NEW HAMPSHIRE

v.

LELAND HUDSON

January 21, 1981

*Gregory H. Smith,* acting attorney general (*Peter W. Mosseau,* assistant attorney general, on the brief and orally), for the State.

*John C. Emery,* of Manchester, by brief and orally, for the defendant.

KING, J. The defendant appeals from an order of the Merrimack County Probate Court (*Cushing,* J.), committing him involuntarily to the New Hampshire Hospital for a period of two years pursuant to RSA 135-B:28. The defendant argues that his commitment must be invalidated because the State failed to comply with the statutory requirements of obtaining a physician's certificate of dangerousness and because the probate court admitted hearsay evidence. The defendant also contends that the petition for involuntary commitment placed him in jeopardy twice for the same offense because the probate court allowed the State, in support of its commitment petition, to use evidence of a crime for which the defendant had already been tried. We reject the defendant's arguments and affirm the order of commitment.

The defendant has been before this court twice in the recent past, *see State v. Hudson,* 119 N.H. 963, 409 A.2d 1349 (1979); *Hudson v. Miller,* 119 N.H. 141, 399 A.2d 612 (1979), and much of the factual background of this case is clearly set forth in those cases. Accordingly, we present only an abbreviated version of the facts.

On February 5, 1977, while confined at the State hospital, the defendant left the grounds without permission. The Concord police arrested him later that day and held him in lieu of bail pending charges of sexual assault and escape. The defendant pleaded guilty to the escape charge on March 14, 1978. Following a trial on May 10, 1979, the defendant was convicted of sexual assault, and the court sentenced him to imprisonment for a period of not less than two nor more than five years. The defendant appealed this conviction, and on December 28, 1979, this court determined that the defendant had been denied a speedy trial and ordered him released unless he was civilly committed within thirty days. *See State v. Hudson,* 119 N.H. 963, 966–67, 409 A.2d 1349, 1351–52 (1979).

On January 10, 1980, the State brought a petition for the involuntary commitment of the defendant pursuant to RSA 135-B:28.

The petition included a certificate of Dr. David Green stating his opinion that the defendant satisfied the criterion for commitment because he was dangerous to himself or to others. *See* RSA 135-B:26.

On January 24, 1980, the Merrimack County Probate Court (*Cushing*, J.) held a hearing on the petition for involuntary commitment. The State offered the testimony of several witnesses in support of the petition. Both Dr. Green and Dr. A. G. Khakee testified that the defendant suffered from mental illness, was a danger to himself and to others, and required in-patient treatment. Two witnesses testified that the defendant, in separate incidents, had coerced each of them to have sexual relations with him at the State prison. A correctional officer, Catherine Barney, testified that, while on duty in the prison visiting room, she had observed the defendant holding a young girl in his lap and rocking the girl against himself for several minutes before going to the men's room in a sexually aroused condition.

Finally, another witness testified that on the day of the defendant's escape from the hospital, the witness and his family were living in an apartment building in Concord. The witness stated that upon noticing that his three-year-old son was missing, he searched the apartment building and discovered the defendant carrying the boy down the stairway leading from the roof. The boy, who had been fully dressed when last seen by his father, was not wearing a shirt, and his pants and underpants were pulled down to his ankles. The front of the defendant's pants was open and his genitals were exposed. The witness further testified that, after a short altercation with the defendant, he called the police, and returned to his apartment where he asked his son what the man had done to him. According to the witness, his son responded that "the manny stuck something up his bum-bum." The defendant's objection to this testimony on hearsay grounds was overruled by the court.

On January 29, 1980, the probate court ordered the defendant committed to the State hospital. This appeal followed.

The defendant first argues that the probate court should have granted his motion to dismiss because the State failed to comply with the statutory procedures for involuntary civil commitment. Specifically, the defendant contends that the physician's certificate filed by Dr. Green was legally deficient. The defendant asserts that RSA 135-B:28 requires that a petition for involuntary commitment be accompanied by a certificate of a physician who has examined the person sought to be committed within five days

of the filing of the petition stating that, based upon this examination, he believes the person sought to be committed is in such a mental condition as to be dangerous to himself or to others. *See* RSA 135-B:28. Because Dr. Green's January 10, 1980, examination of the defendant was brief, the defendant asserts that Dr. Green's opinion could not have been based upon this examination and that, therefore, his certificate does not satisfy the statutory requirement.

Counsel for the defendant and counsel for the State both extensively questioned Dr. Green regarding the basis for his opinion expressed in the physician's certificate. Dr. Green admitted that his examination of the defendant on January 10, 1980, lasted only a few minutes, but he testified that he had acquired extensive knowledge of the defendant's condition from other sources. Although he had been the prison physician for only one year, Dr. Green had met with the defendant on twenty-one occasions and had examined him eighteen or nineteen times. Dr. Green was familiar with the defendant's prior history, including the fact that he had been committed to the State hospital for molesting young girls. He had reviewed the opinions of several psychiatrists included in the defendant's medical records which concluded that the defendant suffered personality disorders. Furthermore, Dr. Green was familiar with the visiting room incident which had occurred in the fall of 1979.

█ In light of this testimony, Dr. Green had ample basis upon which to determine that the defendant was dangerous to himself or to others. Although Dr. Green conceded that he did not reach this conclusion based on the January 10 examination, he testified that the meeting gave him no reason to alter his prior diagnosis. We rule therefore that the physician's certificate satisfied the statute.

Stressing that the boy made the statement ten minutes after the event and only in response to his father's question, the defendant next argues that it was error for the court to allow the witness to testify to the out-of-court statements of his son under the *res gestae* exception to the hearsay rule. The defendant also questions whether the boy was excited at the time he made the statement and, assuming that the boy was excited, whether the source of the excitement was the alleged assault or the altercation in the hall.

█ "The theory which underlies the *res gestae* exception to the hearsay rule is that the circumstances under which the utterance was made afford a guarantee of truth in substitution for that provided by oath and cross-examination. To provide this

substitute guarantee it must appear to the satisfaction of the presiding justice that the utterance was a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event and before he had time to contrive or misrepresent." *Semprini v. Railroad*, 87 N.H. 279, 280, 179 A. 349, 350 (1935). Whether the elements of the exception exist is a question for the trial court. *See Bennett v. Bennett*, 92 N.H. 379, 386, 31 A.2d 374, 380 (1943). We will not disturb its determination unless it is clearly erroneous. In this case there was sufficient evidence upon which the court could find that the boy made the statement in response to the excitement engendered by the assault. Although the statement was not strictly contemporaneous to the event and was in response to an inquiry, this does not preclude a determination that the statement was within the *res gestae*. *See State v. Kenna*, 117 N.H. 305, 307–09, 374 A.2d 427, 429–30 (1977); *State v. Martineau*, 114 N.H. 552, 556–58, 324 A.2d 718, 721–22 (1974); *Murray v. Railroad*, 72 N.H. 32, 38, 54 A. 289, 292 (1903).

Finally, the defendant argues that because he had already been tried for sexual assault, the involuntary commitment proceeding, which included evidence of that incident, violated provisions of the Federal and State Constitutions against double jeopardy. *See* U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 16.

■■ The defendant concedes, as he must, that the rule against double jeopardy is not applicable when one of the two proceedings is civil. *See State v. Bowles*, 113 N.H. 571, 573, 311 A.2d 300, 301 (1973). The defendant argues, however, that because involuntary commitment proceedings may result in the loss of liberty, the proceedings are quasi-criminal and the rule against double jeopardy ought to apply. The defendant misconstrues the nature of the involuntary commitment proceedings. The January 24, 1980, hearing was not held to ascertain the defendant's guilt or innocence concerning the assault or any other charge. Its express and sole purpose was to determine whether the defendant's mental condition was such that he was dangerous to himself or others. *See In re Field*, 120 N.H. 206, 209, 412 A.2d 1032, 1033–34 (1980); *In re Moulton*, 96 N.H. 370, 373, 77 A.2d 26, 28 (1950); RSA 135-B:26, :28. The mere fact that some of the evidence used to establish the defendant's dangerousness related to an incident for which he had already been tried and convicted does not convert the civil proceeding into a criminal trial. *See In re Field, supra* at 209, 412

A.2d at 1033–34; *State v. Hudson*, 119 N.H. 963, 966, 409 A.2d 1349, 1351 (1979).

The defendant argues that this court should analogize involuntary commitment proceedings to juvenile delinquency proceedings and apply the same procedural rules. *See Breed v. Jones*, 421 U.S. 519, 528–31 (1975); *In re Winship*, 397 U.S. 358, 365–68 (1970); *In re Gault*, 387 U.S. 1, 22, *passim* (1967); *State v. Smagula*, 117 N.H. 663, 666–69, 377 A.2d 608, 610–12 (1972). The Supreme Court of the United States has recently addressed this contention and found it wanting. *See Addington v. Texas*, 441 U.S. 418, 427–31 (1979). We agree with the Court that the primary reason for affording criminal due process protection to juvenile proceedings is that both juvenile and criminal proceedings are primarily concerned with determining guilt or innocence. *See id.* at 427–28. Because the primary focus of an involuntary commitment proceeding is the mental condition and dangerousness of the person sought to be committed rather than the ascertainment of guilt or innocence, the defendant's analogy is not compelling.

This court has applied the beyond a reasonable doubt standard of proof to involuntary commitment proceedings. *See Proctor v. Butler*, 117 N.H. 927, 935, 380 A.2d 673, 677–78 (1977). This was not because involuntary commitment proceedings are strictly analogous to criminal trials, however, but because we recognize that a person's interest in liberty and his good name make the application of certain due process protections, including the beyond a reasonable doubt standard of proof, appropriate. *Id.* at 932–35, 380 A.2d at 676–77. We did not intend to imply in *Proctor v. Butler* that an involuntary commitment proceeding is essentially a criminal proceeding. We hold that involuntary commitment proceedings pursuant to RSA 135-B:28 are civil proceedings and therefore not subject to the prohibition against double jeopardy.

*Affirmed.*

All concurred.