Merrimack County Probate Court
No. 82-498
No. 82-581
No. 83-007
No. 83-039
No. 83-040

*In re* SCOTT L.

*In re* ARNOLD L.

*In re* ARIANTHY K.

*In re* ALISON S.

*In re* HENRY S.

December 27, 1983

*Geiger & Heiser,* of Penacook (*Richard W. Heiser* on the brief), by brief for Scott L., Arnold L., Arianthy K., Alison S., and Henry S.

*Gregory H. Smith,* attorney general (*Douglas L. Patch,* assistant attorney general, on the brief), by brief for the State.

BROCK, J. This is a consolidation of five appeals from orders issued by the Merrimack County Probate Court (*Cushing,* J.) for the civil commitment, due to mental illness, of five individuals, pursuant to RSA chapter 135-B. The issue in each case is whether the court erred in denying a motion by each of the five individuals to permit recording of his or her court-ordered psychiatric examination. We find no error and affirm the decrees of commitment.

The pertinent facts, as stipulated by the parties, are:

(1) that each of the five individuals was the subject of a petition for involuntary admission to New Hampshire Hospital, filed in accordance with RSA 135-B:27;

(2) that the probate court ordered a hearing in each case pursuant to RSA 135-B:29, and scheduled a psychiat-

ric examination for each individual prior to hearing, as required by RSA 135-B:32;

(3) that each individual filed a timely motion with the court requesting an order to permit recording of the psychiatric examination, with equipment furnished by counsel for the five; and

(4) that in each case the examination was not recorded, the court denied the motion, and, after the hearing, the court ordered the individual committed.

Because, on this record, none of the five cases is distinguishable from the others, the question before us is a narrow one: whether every subject of commitment proceedings under RSA chapter 135-B is entitled, as a matter of law, to have his or her psychiatric examination recorded.

RSA 135-B:5 guarantees every subject of commitment proceedings the "absolute and unconditional" right to "the assistance of legal counsel prior to, and during any judicial hearing conducted pursuant to [chapter 135-B]." The individuals in these cases argue that, under part I, article 15 of the New Hampshire Constitution and the sixth and fourteenth amendments of the United States Constitution, the right to counsel must include the right to record their psychiatric examinations.

They contend that recording is necessary to enable their counsel effectively to cross-examine the psychiatrist who conducts the prehearing examination and whose report is, by statute, a crucial piece of evidence at the commitment hearing. RSA 135-B:32. They allege that subjects of commitment proceedings are frequently unable to assist their attorneys in preparing for cross-examination, and that a psychiatrist's testimony is very difficult to challenge in the absence of the kind of detailed information a recording would provide about his diagnostic techniques. *See* Note, *Developments in the Law—Civil Commitment of the Mentally Ill*, 87 HARV. L. REV. 1190, 1286–87 n.130 (1974). They conclude that denial of access to such information is an unconstitutional constraint on their counsel's ability to represent them effectively at the commitment hearing. *See United States v. Wade*, 388 U.S. 218, 227 (1967). We disagree.

██ While we have held that the deprivation of liberty inherent in civil commitment is subject to significant due process requirements, *Opinion of the Justices*, 123 N.H. 554, 465 A.2d 484 (1983), we have also consistently held that commitment proceedings are not "strictly analogous to criminal trials" for constitutional purposes. *State v. Hudson*, 121 N.H. 6, 12, 425 A.2d 255, 258 (1981); *In re Field*, 120 N.H. 206, 210–11, 412 A.2d 1032, 1034–35 (1980).

"Because the primary focus of an involuntary commitment proceeding is the mental condition and dangerousness of the person sought to be committed rather than the ascertainment of guilt or innocence," *State v. Hudson supra*, the full range of protections afforded by part I, article 15 and the sixth and fourteenth amendments does not come into play in cases such as those before us here.

 In construing the extent of the right to counsel granted by RSA 135-B:5, we will accordingly apply the due process test set out in *Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 423 A.2d 603 (1980), keeping in mind that "[t]he loss of liberty and stigmatization present in the involuntary commitment setting are fully comparable to the deprivations attending a criminal conviction." *Proctor v. Butler*, 117 N.H. 927, 932–33, 380 A.2d 673, 676 (1977). This means that the private interests at stake in these cases are substantial, and we can affirm the probate court's denial of the motion to record only if "the risk of an erroneous deprivation" of those interests was outweighed in these cases by "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Appeal of Portsmouth Trust Co.*, *supra* at 757, 423 A.2d at 605 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

 We performed a similar analysis (although we spoke in response to a sixth amendment argument) when we held that there was no right to have counsel present at an examination "where the examinee is represented by counsel who saw all relevant documents, was given the opportunity to present his own psychiatric testimony and extensively cross-examined the examining psychiatrist's basis for recommending involuntary admission. . . ." *In re Field*, 120 N.H. at 210, 412 A.2d at 1034. The basis of our holding in *Field* was the principle that, because of the intimate nature of a psychiatric examination, the presence of a "legal and non-medical" observer would severely limit the efficacy of the examination, without sufficient countervailing benefits. *Id.* at 209, 412 A.2d at 1034; *United States v. Albright*, 388 F.2d 719, 726 (4th Cir. 1968). The five individuals involved in the present cases argue that the presence of recording equipment would be far less intrusive than a human observer, and point to our statement in *Field* that "we would not object to recording the examination." *In re Field*, *supra* at 210, 412 A.2d at 1034.

 Our *dictum* in *Field* did not amount to a holding that recording of examinations would henceforth be required in all cases. It was simply a recognition that, in some cases, "the interests of the State in meaningful consultation" might not outweigh the benefits of

recording. *See Lessard v. Schmidt, 349 F. Supp. 1078, 1100 (E.D. Wis. 1972), vacated and remanded on other grounds*, 421 U.S. 957, *aff'd on rehearing*, 413 F. Supp. 1318 (E.D. Wis. 1976).

■ While recording equipment is certainly less intrusive than a human observer, there is scholarly authority that such equipment may have significant intrusive effects. *See* Gelso, *Inhibitions Due to Recording and Clients' Evaluation of Counseling*, 31 PSYCHOLOGICAL REPORTS 675 (1972).

■ Courts generally are reluctant to interfere with psychiatric examinations, believing that "a psychiatrist should be able to pursue his methodology unfettered and that the traditional methods of cross-examination will enable the judge or jury critically to scrutinize all results obtained." *People v. Martin*, 386 Mich. 407, 429, 192 N.W.2d 215, 226 (1971). Although one State, by statute, permits the subject of commitment proceedings to be accompanied during an examination by one or more individuals of his or her choosing, CAL. WELF. & INST. CODE § 5206 (Deering 1979), no court has adopted the general rule urged on us here for all civil cases. *Compare Houston v. State*, 602 P.2d 784, 792–96 (Alaska 1979) (criminal case decided under State Constitution) *with Lessard v. Schmidt supra* (civil case decided on due process grounds).

■ We note further that "the risk of erroneous deprivation" resulting from failure to require recording is small. While this court has recognized the fallibility of psychiatric opinions on the issue of whether a person meets the criteria for involuntary admission, *see Proctor v. Butler*, 117 N.H. at 934, 380 A.2d at 677; *State v. Gregoire*, 118 N.H. 140, 143, 384 A.2d 132, 133 (1978), we have already provided substantial safeguards against excessive deference to those opinions.

■ In *Proctor v. Butler supra*, we held that part I, article 15 of the New Hampshire Constitution requires a standard of proof "beyond a reasonable doubt" in commitment proceedings, *Proctor v. Butler*, 117 N.H. at 935, 380 A.2d at 677, and that "RSA 135-B:28 requires evidence of sufficiently recent 'specific acts or actions' showing potential dangerousness before involuntary confinement be ordered." *Id.*, 380 A.2d at 678. Without such evidence of specific recent conduct, and unless the high standard of proof is satisfied, even the most persuasive psychiatrist's report is insufficient to justify commitment—ultimately a judicial, not medical, decision.

■■ Accordingly, we hold that it is unnecessary to require in every case that a pre-hearing psychiatric examination be recorded. We need not decide whether recording might be necessary in the

particular circumstances of some future case. Nor should our decision be read as creating any presumption concerning the intrusive effect of recording equipment. Any determination as to such an effect must be left to the finder of fact in each case.

*Affirmed.*

All concurred.