OPINION OF THE COURT
Reuben K. Davis, J.
May a State hospital call as a witness on its behalf a patient sought to be retained in a jury review proceeding under Mental Hygiene Law § 9.35? That is the novel question brought before this court upon a motion by said patient, Mr. Kenneth M., seeking an order precluding the Rochester Psychiatric Center from calling Mr. M. as a witness.
The facts of this case are undisputed. On May 7, 1985, Mr. M. was admitted to the Rochester Psychiatric Center upon the application for his involuntary admission accompanied by certificates of two examining physicians pursuant to Mental Hygiene Law § 9.27. Mr. M. thereafter requested a hearing on the question of the need for involuntary care and treatment.
The Rochester Psychiatric Center thereafter on June 27, 1985 made application to the court for continued retention for a period not to exceed six months. Mr. M. requested a hearing, which was had on September 4, 1985 before the Honorable Anthony F. Bonadio, acting J.S.C. On the same date, Justice Bonadio signed an order granting the application for continued retention and Mr. M. then timely petitioned for a rehear *218 ing and review of the proceedings had, before a jury, pursuant to Mental Hygiene Law § 9.35. The Assistant Attorney-General of the State of New York, the attorney for the Rochester Psychiatric Center, has indicated an intention to call Mr. M. as a witness on his client’s behalf at the jury review proceeding. Following this indication, the respondent has moved this court for a preclusion order.
Mr. M. contends that to allow the Rochester Psychiatric Center to call him as a witness at the jury review proceeding would violate his 5th and 14th Amendment constitutional rights of the privilege against self-incrimination. This court finds merit in Mr. M.’s position and, accordingly, determines that he is entitled to the relief sought on this motion.*
As previously noted, the issue raised on this motion presents one of first impression in this State. However, the constitutional privilege against self-incrimination guaranteed by the US Constitution 5th Amendment, which is applicable to the States by reason of the 14th Amendment, has been discussed at length in many "noncriminal” cases by the United States Supreme Court, lower Federal courts and various State courts.
It is true that the 5th Amendment states that no person "shall be compelled in any criminal case to be a witness against himself’. (Emphasis added.) However, the United States Supreme Court, in its decision in In re Gault (387 US 1, 47 [1966]), involving a juvenile delinquency proceeding brought under an Arizona law, addressed the applicability of the privilege against self-incrimination and held that it " 'can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory’ ” *219 (quoting from concurring opn of Mr. Justice White in Murphy v Waterfront Commn., 378 US 52, 94 [1964]).
The case of In re Gault (supra) involved the issue of the due process rights to be afforded a juvenile in a proceeding wherein a determination is made as to whether a juvenile is a delinquent as a result of alleged misconduct on his or her part. The court, in a well-reasoned decision written by Mr. Justice Fortas, traced the evolution of juvenile courts in this country and their purposes for existence. In today’s society, the issues of crime and punishment have all but been abandoned and the child alleged to have engaged in acts of misconduct is to be treated and rehabilitated. It followed that since the State was acting as parens patriae, the proceedings were not adversary. This was used as a basis to rationalize the belief that the constitutional scheme was inapplicable to juvenile proceedings. However, the United States Supreme Court declared that reality of the process had to be confronted; where a juvenile was sought to be committed to an institution for a period of time, his or her liberty would necessarily be restrained and constitutional guarantees would come into play. Likewise, in a proceeding to involuntarily retain a person who is allegedly mentally ill in a State institution, the same issues arise. The continued retention is sought so the person can be treated and cared for in the institution. Crime and punishment and guilt are not at issue. Yet, the fact of the matter is that, as in a juvenile delinquency proceeding, the institution is an institution of confinement in which the mentally ill person is "incarcerated” for a period of time and his liberty is restrained.
In addressing the precise issue in a juvenile delinquency proceeding, the court in In re Gault (supra, at p 50) stated: "commitment is a deprivation of liberty. It is incarceration against one’s will, whether it is called 'criminal’ or 'civil’. And our Constitution guarantees that no person shall be 'compelled’ to be a witness against himself when he is threatened with [a] deprivation of his liberty — a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind’s battle for freedom.”
This court is aware of, but rejects, other court decisions which have held that the 5th Amendment privilege against self-incrimination is inapplicable to proceedings involving civil commitments so long as they do not seek to elicit evidence which may result in a criminal prosecution. (See, In re Field, *220 120 NH 206, 412 A2d 1032 [1980]; Commonwealth v Barboza, 387 Mass 105, 438 NE2d 1064 [1982]; Lynch v Baxley, 386 F Supp 378 [US Dist Ct, MD Ala, ND 1974].) This court believes that the decision of the United States Supreme Court in In re Gault (supra), involving the applicability of the privilege against self-incrimination, by analogy, should apply to the case before this court. Furthermore, it would be indeed surprising if the privilege against self-incrimination would be available to Mr. M. if he were involved in a criminal proceeding yet the constitutional guarantees would not come into play in a civil commitment proceeding simply because of the "civil” label of convenience. The privilege doesn’t turn upon the label given the proceeding.
The privilege must turn upon the reality of the process and the result it may invoke. Here, Mr. M. is sought to be involuntarily retained in a mental hospital and during this period of time his liberty will necessarily be restrained. Accordingly, this court concludes that the privilege against self-incrimination applies in this case, precluding the Rochester Psychiatric Center from calling Mr. M. as a witness on its behalf in the jury review proceeding.

 Although the moving papers indicate the relief sought is an "order precluding the State from calling Mr. M. as a witness in the jury review proceeding to be held on October 23, 1985; precluding the State from introducing into evidence or using, for any purpose other than impeachment, the patient’s testimony at the initial retention hearing; precluding any reference to the initial retention hearing or the result thereof, in the presence of the jury, at the jury review proceeding; and awarding such other, further and different relief to Mr. M. as, to the court, may be deemed to be just and proper in the premises,” Mr. M. withdrew his request with respect to all relief sought except as to the first request since the Assistant Attorney-General asserted an intention only to call Mr. M. as a witness and not to attempt to use his testimony at the initial retention hearing as proof at the jury review proceeding. Accordingly, it remains that the only issue before the court is the hospital’s ability to call Mr. M. as a witness on its behalf.