Merrimack County Probate Court
No. 98-286

IN RE RICHARD A.

April 18, 2001

*Philip T. McLaughlin*, attorney general (*Mary E. Schwarzer*, attorney, on the brief and orally), for the State.

*Tony F. Soltani*, of Epsom, by brief and orally, for the respondent.

DUGGAN, J. After a hearing before the Merrimack County Probate Court (*Hampe*, J.), the respondent, Richard A., was involuntarily admitted to New Hampshire Hospital. On appeal, the respondent asks us to determine whether an attorney appointed to represent an indigent client in an involuntary commitment proceeding under RSA chapter 135-C (1996 & Supp. 1997) must pursue an appeal on behalf of the client when the attorney has concluded that

the appeal is frivolous but the client insists on an appeal. We hold that, although an indigent respondent appealing a civil involuntary admission is not entitled to the full extent of the procedures accorded a criminal appellant, certain procedural protections are warranted.

On December 14, 1997, the respondent was admitted to New Hampshire Hospital on an involuntary emergency admission petition. See RSA 135-C:27, :32 (1996). Thereafter, New Hampshire Hospital filed a petition seeking the respondent's involuntary admission. See RSA 135-C:34-:54 (1996). Counsel was appointed to represent the respondent. See RSA 135-C:22 (1996).

On January 6, 1998, the court held a hearing on the petition. A court-appointed psychiatrist certified that the respondent suffered from a "severe psychotic illness" which constituted "a mental illness within the meaning of [RSA chapter 135-C]." He noted that the respondent had been admitted in December 1997 after barricading himself in a room with a hatchet. The psychiatrist found the respondent to be delusional and recounted the respondent's statements that he intended to swallow coins in order to force medical personnel to x-ray him, whereupon, he asserted, they would discover the monitors and transmitters the FBI had implanted in his body. At the conclusion of the hearing, the court ordered that the respondent be "admitted to [New Hampshire] Hospital . . . on an involuntary basis . . . for a period not to exceed one year with a conditional discharge as soon as appropriate."

The respondent informed his lawyer that he wished to appeal the order. Counsel, however, concluded that an appeal would be frivolous and asked the probate court to certify two issues to this court: (1) "Whether an indigent respondent in an involuntary admission proceeding is entitled to representation by counsel during the appellate process . . ."; and (2) "Whether the appointed counsel, in a post judgment proceeding of a mentally ill, but not incapacitated, client is bound, obligated or governed by the standard enunciated in State v. Cigic, 138 N.H. 313 (1994)[,] or Anders v. California, 386 U.S. 738 (1967)." The probate court declined to certify the questions and ruled that "Involuntary Admission proceedings are civil and therefore the standards of State [v.] Cigic do not apply." This appeal followed.

The fundamental issue presented here concerns the tension between the availability of appellate review by this court and appellate counsel's ethical obligation not to raise frivolous issues. The United States Supreme Court resolved this issue in criminal cases under the Fourteenth Amendment to the Federal Constitution

in *Anders*. In that case, it held that if a State provides for a right to appeal a criminal conviction where counsel is constitutionally required, *see Douglas v. California*, 372 U.S. 353, 356-58 (1963), then counsel cannot merely inform the court that the appeal is frivolous and abandon the appeal. *See Anders*, 386 U.S. at 744. Rather, unless the defendant agrees to withdraw the appeal, counsel must file a brief raising all arguable issues accompanied by a motion to withdraw. *See id.* After the defendant is given the opportunity to raise any points he or she chooses, the appellate court must independently review the record to verify counsel's assessment of the case. *See id.* More recent Supreme Court cases have recognized that alternative procedures that similarly protect defendants' rights are also sufficient to satisfy constitutional mandates. *See, e.g., Smith v. Robbins*, 528 U.S. 259, 278-79 (2000) (upholding procedure allowing appellate counsel in frivolous appeal simply to submit brief that summarizes history of the case and raises no issues).

In *State v. Cigic*, we decided, consistent with a number of other States, to reject the procedure set out in *Anders*. *Cigic*, 138 N.H. at 317; *see, e.g., State v. McKenney*, 568 P.2d 1213, 1214 (Idaho 1977); *Ramos v. State*, 944 P.2d 856, 858 (Nev. 1997); *Huguley v. State*, 324 S.E.2d 729, 731 (Ga. 1985). Instead, we adopted an approach rooted in the American Bar Association (ABA) Standards. *Cigic*, 138 N.H. at 317; ABA STANDARDS FOR CRIMINAL JUSTICE, The Defense Function, Standard 4-8.3, *reprinted in* 49 CRIM. L. REP. (BNA) No. 2, at 2020-21 (April 10, 1991). *See generally* Warner, *Anders in the Fifty States: Some Appellants' Equal Protection is More Equal Than Others*, 23 FLA. ST. U. L. REV. 625 (1996). The ABA approach, as reflected in *Cigic*, requires that, in the first instance, counsel make an effort to persuade the client not to pursue a frivolous appeal. *See Cigic*, 138 N.H. at 317. If the client insists upon pursuing the appeal, however, counsel must file the notice of appeal and present the case "as well as possible" through subsequent proceedings. *Id.* at 318. Counsel is prohibited from informing the court that the appeal is frivolous. *See id.* To allow counsel to follow this procedure, we created an exception to New Hampshire Rule of Professional Conduct 3.1. *See id.*

■ The respondent argues that, as a matter of due process, we should extend *Cigic* to appeals of involuntary commitment proceedings. The respondent correctly points out that, in determining the scope of the right to counsel granted by RSA 135-C:22 (1996), we have employed a due process analysis. *See In re Scott L.*, 124 N.H. 327, 331 (1983) (decided under prior law). This statutory right to

counsel applies to commitment proceedings only in the probate court. Nonetheless, the right to counsel on appeal is governed by due process and equal protection. *See State v. Westover*, 140 N.H. 375, 378 (1995).

As is our settled practice, we will analyze the due process issue in this case first under our own constitution, relying upon federal case law only for guidance. *See In re Eduardo L.*, 136 N.H. 678, 684-85 (1993). The due process analysis has three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re Brown*, 126 N.H. 309, 312 (1985) (quotation omitted).

The private interests at stake in civil commitment proceedings, loss of liberty and social stigmatization, are substantial and parallel those at risk in the criminal context. *See Scott L.*, 124 N.H. at 331. This similarity, however, does not compel identical procedural safeguards under the State Constitution. *See id.* at 330-31. Persons subject to civil commitment are not entitled to the same level of due process as individuals subject to incarceration for criminal wrongdoing. *See id.* "Because the primary focus of an involuntary commitment proceeding is the mental condition and dangerousness of the person sought to be committed rather than [determination] of guilt or innocence, the full range of protections afforded by [the State and federal due process provisions] does not come into play . . . ." *Id.* at 331 (quotation and citation omitted); *see also State v. Hudson*, 121 N.H. 6, 12 (1981) (distinguishing juvenile delinquency proceedings from civil commitment). Because "the private interests at stake in [this case] are substantial," we must weigh "the risk of an erroneous deprivation of those interests" against "the government's interest." *Scott. L.*, 124 N.H. at 331 (quotations omitted).

In assessing the risk of an erroneous deprivation of the respondent's liberty interest, we first observe that an individual cannot be involuntarily committed absent clear and convincing evidence that he or she "is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others." RSA 135-C:34 (1996); *see In re Sanborn*, 130 N.H. 430, 446 (1988). While the clear and convincing standard falls short of the

proof required to secure a criminal conviction, it nevertheless sends a strong message to the fact finder about the degree of certainty required before a civil commitment can be imposed. *Cf. Addington v. Texas*, 441 U.S. 418, 423-24 (1979). In addition, civil commitments generally turn on medical evidence, and the statute requires that such evidence be contemporaneous with the commitment hearing. For example, an approved physician must have examined the person to be committed within five days of the date the commitment petition was filed. *See* RSA 135-C:36, I(c) (1996); *see also* RSA 135-C:36, II (1996). In turn, the probate court must conduct a hearing on the petition within fifteen days of its receipt. *See* RSA 135-C:37 (1996). Further, a court-appointed psychiatrist must examine the person who is the subject of the petition in advance of the hearing and provide an opinion on, among other things, whether the statutory standard, RSA 135-C:34, has been met and whether involuntary commitment is necessary for treatment. *See* RSA 135-C:40, I, II (1996).

The statute also incorporates safeguards to preserve the ability of the named individual to meaningfully contest the petition. A copy of the examining psychiatrist's report must be made available no later than the day of the hearing. *See* RSA 135-C:41 (1996). At the hearing, the person subject to the petition has "the right to legal counsel, to present evidence on his own behalf, . . . and to cross-examine witnesses." RSA 135-C:43 (1996). The person "shall also have the right to summon as a witness the [examining] psychiatrist . . . and to cross-examine him." *Id.* Thus, significant statutory safeguards exist to minimize the risk of erroneous deprivation of liberty due to civil commitment.

■ Even if a person is erroneously committed under RSA 135-C:34-:54, the statutory scheme provides mechanisms for immediate release not afforded criminal defendants. Specifically, the administrator of the facility treating an involuntarily committed person may grant the individual an absolute discharge at any time without court approval, as long as the person no longer requires the acute care provided by the facility. *See* RSA 135-C:49, I (Supp. 1997). Moreover, "the layers of professional review and observation of the patient's condition, and the concern of family and friends generally will provide continuous opportunities for an erroneous commitment to be corrected." *Addington*, 441 U.S. at 428-29. There are thus practical and statutory safeguards that would provide for the prompt release of a person erroneously committed under RSA 135-C:34-:54, independent of appellate review within the court

system, a sometimes lengthy process even when expedited. Conversely, the court system is the only recourse available to a defendant erroneously convicted of a crime. In short, we conclude that the risk of erroneous deprivation of indigent appellants' liberty interests if the *Cigic* procedures are not accorded to them is low.

Finally, the governmental interest at stake weighs against an expansion of *Cigic*. The procedure authorized by *Cigic* requires the expenditure of substantial State resources, both in the full briefing required of State prosecutors and in the full appellate review of the appeal. An expansion of *Cigic* would be a further drain on these limited resources.

■ The respondent is entitled to no greater protection under the Federal Constitution. The United States Supreme Court has limited the applicability of the *Anders* procedure to direct appeals in criminal cases where there is a constitutional right to counsel. *See Smith*, 528 U.S. at 273. Once a criminal case has gone beyond the first level of appellate review to proceedings where there is no federally guaranteed right to counsel, *Anders* does not apply. Indeed *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987), held that although a state statute granted a right to counsel in post-conviction proceedings, counsel had no obligation to follow *Anders*. *See also Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). Thus, under the Federal Constitution, counsel in this case had no obligation to assist the respondent with a frivolous appeal.

Nor are we convinced that there is significant value in extending *Cigic* to civil commitment cases. We concluded in *Cigic* that the procedure we adopted therein "preserves the integrity of the attorney-client relationship better than a strict adherence to *Anders* does." *Cigic*, 138 N.H. at 317. While preservation of the integrity of the attorney-client relationship is of significant value in all cases, it is of paramount importance when it is constitutionally guaranteed and when the State is seeking to punish, not treat, the defendant. Thus, the interests that *Cigic* protects are of lesser significance in the context of civil commitment proceedings.

While we conclude that the *Cigic* procedure required in criminal cases does not apply to an involuntary civil commitment case, we are mindful of the fact that involuntary civil commitment does involve a loss of liberty. *See Scott L.*, 124 N.H. at 331. Even though the purpose is for treatment, not punishment, the fact remains that an individual's liberty is at stake. In light of that liberty interest, at least one other court has required *Anders*-type safeguards in involuntary civil commitment proceedings. *In re Juswick*, 604

N.E.2d 528, 530 (Ill. App. Ct. 1992). And, as we indicated in *State v. Westover*, where we held that there is no right to counsel on appeal of a class B misdemeanor, the absence of the potential for loss of liberty weighs strongly against a right to counsel. *See Westover*, 140 N.H. at 377-78. In contrast, the loss of liberty in this case weighs in favor of an expanded role for this court in reviewing counsel's determination of the frivolousness of the appeal. To completely deny access to the appellate process based solely on the attorney's determination of the merit of the appeal is inconsistent with this fundamental interest.

■ Accordingly, in involuntary civil commitment proceedings when a client clearly indicates to counsel a desire to appeal the commitment order and counsel concludes that the appeal is frivolous, counsel must first attempt to persuade the client not to appeal. If, however, the client insists on appealing, counsel should file the notice of appeal. To avoid violating Professional Conduct Rule 3.1, the notice of appeal should be accompanied by a motion to withdraw indicating that counsel has forwarded a copy of the notice of appeal to the client and has advised the client of the right to file a supplement to the notice of appeal raising any additional issues. In cases where counsel is appointed by the court, the responsibility to file the notice of appeal, whether or not the appeal has merit, is part of the representation under RSA 135-C:22. The notice of appeal should set forth all issues preserved for review including frivolous issues. If the only issue raised is sufficiency of the evidence, counsel should raise that issue and summarize the evidence introduced by both sides at trial.

In determining whether to accept the appeal, the court may require a responsive pleading, review the record of the probate court proceedings or take other appropriate action. The court may decline the appeal based solely upon the notice of appeal and any supplement offered by the respondent, because, as set forth herein, the *Cigic* procedures are not required by our State Constitution and the *Anders* procedures are not required by the Federal Constitution.

As applied to this particular case, we allow counsel for the appellant thirty days to file a notice of appeal from the commitment hearing or to take other appropriate action.

*So ordered.*

NADEAU and DALIANIS, JJ., concurred; SMITH and HOLLMAN, JJ., superior court justices, specially assigned under RSA 490:3, concurred.