Sheppard v. River Valley Fitness, et   CV-00-111-M    07/16/03
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Mary Chris Sheppard
and Robert Sheppard,
      Plaintiffs

      v.                                    Civil No. 00-111-M
                                            Opinion No. 2003 DNH 110
River Valley Fitness One, L.P.
d/b/a River Valley Club; River
Valley Fitness GP, L.L.C.; River
Valley Fitness Associates, Inc;
Joseph Asch; and Elizabeth Asch,
      Defendants


**O R D E R**


       Before the court is Joseph and Elizabeth Asch's motion for

summary judgment on Mary Chris Sheppard's claim for intentional

interference with prospective contractual relations (document no.

197).  Plaintiff objects.  For the reasons given below,

defendants' motion for summary judgment is granted.



**Summary Judgment Standard**

       Summary judgment is appropriate when the record reveals "no

genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law."  FED. R. CIV. P.

56(c).  "To determine whether these criteria have been met, a

court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)).

> Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

Of particular relevance here, "[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir.

2

1994)).  When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro, 261 F.3d at 94 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

The facts of record, presented in the light most favorable to plaintiff, are as follows.

On November 24, 1998, Sheppard filed a sexual harassment complaint against River Valley Club ("RVC") with the Equal Employment Opportunity Commission ("EEOC") and the New Hampshire Commission for Human Rights.  At some point during the first two weeks of December, 1998, she resigned from her position as Fitness Director at RVC because of the conduct alleged in her EEOC complaint.  In early January, 1999, RVC hired a new Fitness Director.

On January 22, 1999, plaintiff, and her husband Robert, met with Joseph and Elizabeth Asch, and a third party, Leo McKenna. That meeting was initiated by Linda Ingle of the EEOC:

> In January of 1999, Linda Ingle of the EEOC on Mrs. Sheppard's behalf requested that [the Asches] participate in a settlement meeting with [Ms. Sheppard] to attempt to resolve her claims against RVC. With [Ms. Sheppard's] agreement, Leo McKenna, a third party she said she felt comfortable with, and Mrs. Sheppard's husband Bob, participated, and the meeting was held on January 22, 1999 in Mr. McKenna's office.

(J. Asch Dep. (Nov. 28, 2000) ¶ 8; see also E. Asch Dep. (Nov. 28, 2000) ¶ 6.)

Six days later, Sheppard described that meeting, in a retaliation claim filed with both the EEOC and the Massachusetts Commission Against Discrimination, as follows:

> On January 22, 1999, I met with Mr. Asch, Mrs. Asch, [and] Mr. Leo McKenna to discuss the outcome of my previous charge of discrimination alleging a sexually hostile working environment, my forced resignation that occurred as a result of the environment, and my interest in resolving all outstanding issues and be[ing] rehired or reinstated into a position. Since Respondent had already hired my replacement of the Fitness Director's position, I inquired into the possibility of creating a new position, Assistant Fitness Director and outlined what the possible job duties would be.

> Mr. and Mrs. Asch both informed me that they would not consider rehiring or reinstating me into any position for at least several months because "it would be too uncomfortable for them and a constant reminder of the charges I made against them, and that I would then have to reapply and be re-considered at that time." They stated "too much water had gone under the bridge and they needed a cooling off period".

(Pl.'s Obj. to Def.'s Mot. Summ. J., Ex. 3 (emphasis added).) Sheppard expressed her own interest in being rehired. But, significantly, she did not point to any evidence suggesting that RVC had expressed an interest in rehiring or reinstating her, much less that RVC expressed an <u>intent</u> to do so. In her own deposition, Sheppard characterized the January 22 meeting in the following way:

Q. You understood that the meeting was to try to settle your claims?

A. I actually thought it was to get my job back.

Q. Who told you that?

A. <u>I believed</u> that's what I was talking to Linda about, <u>I was under the assumption</u> that I was going to get my job back, we were going to discuss getting my job back.

Q. Linda Ingle told you that you were going to discuss getting your job back at that meeting?

A. Yes, I believe so.

5

(Pl.'s Obj. to Def.'s Mot. Summ. J., Ex. 1 (M.C. Sheppard Dep.) at 303 (emphasis added).) While Sheppard "assumed" she would be rehired at the January 22 meeting, she has produced no evidence tending to establish a factual basis for that assumption (other than her obvious hope for a successful negotiation.) The evidence of record discloses, at most, that the parties met, at the urging of the EEOC facilitator, to explore the possibility of settling the entire dispute.

At the January 22 meeting, Sheppard asked to be rehired, acknowledged that her former position had already been filled, and suggested one or more management-type positions that might be created for her. Sheppard was not rehired on January 22, and Elizabeth Asch told her she would not return to work at RVC for several months at least, because her presence would be uncomfortable for the Asches – reminding them of the charges she had made against Joseph Asch (without cause, from the Asches' point of view). Elizabeth Asch did suggest that Sheppard might reapply for employment at RVC the following summer. But, as noted, Sheppard filed a retaliation claim with the EEOC six days

6

later, on January 28. She did not apply for a position with RVC after the meeting, and was not offered one.

In Count II of the Second Amended Complaint, which is the operative complaint in this case, plaintiff charges RVC, River Valley Fitness One LP, and River Valley Fitness Associates, Inc., with retaliation, in violation of Title VII of the Civil Rights Act of 1964. Specifically, plaintiff asserts that "[d]efendants retaliated . . . by failing to rehire Ms. Sheppard due to the fact that she had filed a Complaint" with the EEOC. (Sec. Am. Compl. ¶ 52.) In Count IV, which asserts a claim for intentional interference with prospective contractual relations, plaintiff says that "[d]efendants Joseph and Elizabeth Asch interfered with Plaintiff's relationship with her employer by causing her employer to refuse to rehire Ms. Sheppard in retaliation for her complaints of sexual harassment committed by Joseph Asch," and that defendants' actions were "adverse to the employers in that they were to retaliate for accusations that Joseph Asch had sexually harassed women and/or because they subjected the employer to liability for retaliation under Title VII." (Sec. Am. Compl. ¶¶ 63, 64.) Count IV does not assert a claim for

7

tortious interference with an ongoing contractual relationship or wrongful constructive discharge based upon Sheppard's resignation from RVC.[1] Thus, Count IV rests solely upon the alleged role of Joseph and Elizabeth Asch in RVC's failure to rehire Sheppard on January 22.[2]

## Discussion

The Asches move for summary judgment on Sheppard's intentional interference with prospective contractual relations claim (Count IV) on grounds that: (1) Sheppard lacked a prospective contractual relationship with RVC; (2) even if she had such a relationship, the Asches were unaware of it; (3) the Asches did nothing to induce or cause a hiring decision by RVC; (4) plaintiff has failed to show malice on the part of the Asches; and (5) plaintiff has suffered no damages, since RVC

---

[1] Intentional interference (based upon RESTATEMENT (SECOND) OF TORTS § 766B) commonly arises from an employer's termination of employment. See, e.g., McHugh v. Bd. of Educ.; 100 F. Supp. 2d 231 (D. Del. 2000); MacDougall v. Weichert, 677 A.2d 162 (N.J. 1996). Here, however, plaintiff's request to add such a claim was denied by order dated January 24, 2002 (document no. 162).

[2] The court's search, albeit limited, has identified no intentional interference cases based upon a failure to hire, which is the sole factual basis for plaintiff's claim.

8

never had an open position which she could fill.  Plaintiff counters by identifying various factual disputes that, she believes, require a trial.

Under New Hampshire's common law, intentional interference with prospective contractual relations occurs when "[o]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another [and thus becomes] liable to the other for the harm caused thereby."  Baker v. Dennis Brown Realty, Inc., 121 N.H. 640, 644 (1981) (quoting Bricker v. Crane, 118 N.H. 249, 252 (1978)).

> The . . . prospective contract need not be reduced or expected to be reduced to a formal, written instrument. Instead, all that is required is a promise, or the reasonable expectation of a promise, creating a duty recognized by law.  Restatement (Second) of Torts § 766 cmt. f (1979); id. § 766B cmt. c; see Fineman v. Armstrong World Indus., 774 F. Supp. 225, 233-34 (D.N.J. 1991) (interpreting Restatement § 766B), rev'd on other grounds [1992-2 TRADE CASES ¶ 70,010], 980 F.2d 171 (3d Cir. 1992), cert. denied, 507 U.S. 921 (1993).

Heritage Home Health, Inc. v. Capital Region Health Care Corp., Civ. No. 95-558-JD, 1996 WL 655793, at *3 (D.N.H. Oct. 1, 1996).

9

As noted in the September 28, 2001, order on defendants' motion for summary judgment (document no. 128), to prevail on a claim of intentional interference with prospective contractual relations, a plaintiff must prove that she had an "already existing relationship[] that gives rise to a reasonable expectation of economic advantage."  (Order at 17 (citations and internal quotation marks omitted).)

For an expectation of economic advantage to be reasonable, it must be based on "a sufficiently concrete prospective contractual relation."  Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 195 (3rd Cir. 1992) (decided under New Jersey law, which adopts § 766 of the RESTATEMENT (SECOND) OF TORTS).  For example, in Baker, the requirement of a sufficiently concrete prospective contractual relationship was satisfied by the existence of a draft purchase and sale agreement, negotiated by agents for the buyer and the seller, and signed by the buyer. 121 N.H. at 643.

Before turning to the reasonableness of Sheppard's claimed expectation of economic advantage (presumably in the form of her

anticipated rehiring by RVC), it is first necessary to identify the relevant time period, especially in light of the apparent factual dispute over what jobs were available at RVC during the spring of 1999. Count IV asserts that defendants intentionally interfered with Sheppard's prospective contractual relationship with RVC by failing to rehire her, in retaliation for her having complained about Joseph Asch's alleged harassing behavior. Indeed, in her January 28, 1999, EEOC complaint, Sheppard asserted that she suffered retaliation when she was not rehired on January 22.

Sheppard's conduct and testimony establish her own belief that the Asches' retaliation, and, therefore, their intentional interference, took place at the January 22 meeting. Consequently, the availability of positions at RVC during the spring of 1999 is not significant, and does not, as plaintiff asserts, constitute a material fact. See Navarro, 261 F.3d at 93-94. Rather, the relevant question is whether Sheppard had a reasonable expectation of economic advantage leading up to or at the January 22 meeting.

11

Defendants contend that Sheppard had no reasonable expectation of economic advantage before the January 22 meeting because there were no relevant positions available to be filled at RVC[3] and because Sheppard and RVC had not taken steps toward forming a contract sufficient to give rise to a reasonable expectation of reinstatement. Plaintiff does not directly discuss the reasonableness of her asserted expectation of rehiring, declaring that "[t]he issue of Ms. Sheppard's 'reasonable expectation of economic advantage' has already been decided in Ms. Sheppard's favor." (Pl.'s Obj. to Def.'s Mot. Summ. J. § 9.) Rather, plaintiff takes an alternative approach, offering evidence on a different point – that in January, 1999, RVC had open positions in sales and at the front desk, and that she would have accepted either of those positions, had they been offered to her.

---

[3] Defendants contend that Sheppard fully understood that her former position had already been filled and that the positions she wanted to fill (assistant fitness director and/or liaison to Mr. Cioffredi's business) did not then exist at RVC. Thus, according to defendants, Sheppard came to the meeting with little more than the hope of negotiating the creation of an entirely new position as part of a settlement of her pending discrimination claims.

12

The issue of Sheppard's reasonable expectation of economic advantage was not previously decided in her favor. The September 28, 2001, order stated only that it was "at least arguable" on the record then before the court that Sheppard reasonably expected to be rehired by RVC. Based upon the undisputed factual record now before the court, that proposition is no longer arguable.

The evidence produced by plaintiff clearly establishes that she wanted the Asches to offer her position at RVC on January 22, and she hoped a position would be offered as part of a settlement agreement. But Sheppard has not shown that a genuine dispute as to a material fact exists, because she has produced no evidence from which a reasonable jury could conclude that her hope for a settlement that included reinstatement, constituted a "reasonable expectation" that she would be offered a position. See Navarro, 261 F.2d at 94.

The uncontested record evidence discloses that the January 22 meeting was initiated by Linda Ingle of the EEOC, was agreed to by the Asches, and was facilitated by Mr. McKenna in an effort

to amicably resolve plaintiff's pending EEOC complaint, all of which tends to undermine the reasonableness of Sheppard's claimed reliable expectation that she would be rehired. In her January 28, 1999, EEOC complaint, Sheppard said that she expressed her interest in being rehired at the January 22 meeting, but she did not say that RVC had ever expressed any interest in rehiring her, or, but for intermeddling, would have rehired her – she claimed only that the Asches had agreed to participate in the meeting to discuss settlement of her first (and then pending) EEOC complaint.

Plaintiff has provided deposition testimony to the effect that Linda Ingle told her that rehiring would be discussed at the January 22 meeting, but there are two difficulties with that evidence. First, it is hearsay. See FED. R. CIV. P. 56(e). Second, Ingle said only that rehiring would be "discussed," not that Sheppard would be rehired, or was even likely to be rehired, or could reasonably expect to be rehired at the January 22 meeting. Moreover, there is no evidence that Ingle ever conveyed to Sheppard that RVC (or Elizabeth Asch) was interested in rehiring her, or expressed an intent to rehire her.

14

A reasonable jury could not conclude that the January 22 meeting was anything other than a conciliation meeting, or settlement conference, at which Sheppard and the Asches attempted, unsuccessfully, to resolve Sheppard's sexual harassment claim. The meeting was not preceded by any promise by RVC that Sheppard would be rehired; it was preceded, at most, by the Asches' promise to discuss resolution of Sheppard's first EEOC complaint. Sheppard went into that meeting with the usual hope of a favorable outcome, but no guarantee that any resolution would be achieved, much less a resolution that involved her being rehired. Plaintiff has produced no evidence of any statement or action attributable to RVC (or either Elizabeth or Joseph Asch acting on its behalf) that would have given her reason to believe that the January 22 meeting would result, or was likely to result, in her reinstatement to her former position, or her being hired to fill either an existing position or one created expressly for her. Without evidence of such an agreement upon which she could reasonably rely – in essence the employment equivalent of a negotiated purchase and sale agreement signed by a prospective buyer – plaintiff cannot meet her burden of production on the "reasonable expectation" element of her tort

15

claim for intentional interference with prospective contractual relations.  In other words, plaintiff has produced no facts, provable at trial, from which a jury could conclude that before or at the January 22 meeting, Ms. Sheppard had a reasonable expectation that RVC would rehire her, such that the Asches might be held liable for interfering with that expectation. Accordingly, defendants are entitled to summary judgment on the state tort claim described in Count IV.

## Conclusion

For the reasons given, defendants' motion for summary judgment (document no. 197) is granted.  Moreover, because defendants are entitled to summary judgment on Count IV, they are, necessarily, entitled to judgment on Count VI, Robert Sheppard's claim for loss of consortium.  Because the only claims remaining in this case are Sheppard's Title VII claims against a defendant subject to a bankruptcy stay, the Clerk of Court shall administratively close the case, subject to being reopened by motion in the event the bankruptcy proceedings no longer pose an impediment.

16

**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

July 16, 2003

cc:  Lauren S. Irwin, Esq.
     William E. Whittington, IV, Esq.
     Joseph F. Daschbach, Esq.