Sheppard v. River Valley Fitness          CV-00-111-M     09/28/01
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Mary Chris Sheppard and
Robert Sheppard,
      Plaintiffs

      v.                                    Civil No. 00-111-M
                                            Opinion No. 2001 DNH 177
River Valley Fitness One, L.P.
d/b/a River Valley Club,
River Valley Fitness GP, L.L.C.,
River Valley Fitness Associates, Inc.,
Joseph Asch, and Elizabeth Asch,
      Defendants


                          **O R D E R**


      Mary Chris Sheppard brings this sexual harassment suit

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, et seq. ("Title VII"), and asserts various New Hampshire

common law claims as well.  Her husband, Robert, brings a claim

for loss of consortium.  Defendant River Valley Fitness One,

L.P., doing business as River Valley Club ("RVC"), is a limited

liability company consisting of approximately fifty-five limited

partners and one general partner. RVC employed plaintiff[1] between March and December of 1998. Defendants River Valley Fitness Associates, Inc. ("RVFA"), and River Valley Fitness GP, L.L.C. (the "LLC"), have served consecutively as the general partner of RVC. The LLC is the current general partner. Individual defendants Elizabeth and Joe Asch play, or have played, a role in the management and/or control of RVC and its general partner.[2]

Plaintiff alleges that over the course of five to six months, she was subjected to a hostile work environment by Joe Asch, and that her employer failed to take adequate measures to stop the harassment. Five counts of the second amended complaint remain:[3] (1) hostile work environment sexual discrimination (Count I); (2) retaliation (Count II); (3) intentional

---

[1]The issues addressed in this order concern, primarily, the relationship between Mary Chris Sheppard and her former employer. Accordingly, the court will use the singular "plaintiff" to refer to her, and will refer to her husband as "Robert" when necessary.

[2]The parties dispute Joe Asch's role in the control of RVC and its general partner. That dispute cannot be resolved on this record.

[3]Plaintiff's assault claim (Count III) was voluntarily dismissed on September 11, 2000.

2

interference with advantageous relationship (Count IV); (4) enhanced compensatory damages (Count V); and (5) loss of consortium (Count VI).  Counts I and II are asserted against RVC, RVFA, and the LLC.  Counts IV, V, and VI are brought against Elizabeth and Joe Asch individually.  Before the court is defendants' motion for summary judgment (document no. 51).

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship

4

<u>Green Nursing Center</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## **Discussion**

A.   Hostile Work Environment

"For sexual harassment [based on a hostile work environment] to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 67 (1986) (internal quotation marks and alterations omitted).  In assessing severity or pervasiveness, the court must consider the totality of the circumstances, "'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  <u>White v. New Hampshire Department of Corrections</u>, 221 F.3d 254, 260 (1st Cir. 2000) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 778 (1998)).  The totality of a particular victim's circumstances can include

5

harassing behavior toward women other than the plaintiff.  See Bartholomew v. Delahaye Group, Inc., Civ. No. 95-20-B, 1995 WL 907897 (D.N.H. Nov. 8, 1995), at * 4 ("'Environment' implies that in determining whether defendants discriminated against plaintiff, [the court] must consider her entire employment situation, including derogatory conduct towards women but not aimed specifically at plaintiff."); see also Hurley v. Atlantic City Police Dept., 174 F.3d 95, 110 (3d Cir. 1999); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987).

Plaintiff bases her hostile work environment claim on the following specific conduct by Joe Asch over the course of a five to six month period: (1) two unwelcome kisses on the cheek, (2) a comment about his noticing "everything about [her], right down to the pale shade of lipstick [she] wear[s]," (3) "many sexual jokes" (although plaintiff only recalls the specific context and occurrence of two), (4) constant sexual comments, and (5) staring or leering at women, including plaintiff, while rubbing and/or touching his penis.  Plaintiff says she was aware of Asch's

6

conduct toward her, as well as his similar conduct toward other women working at RVC.

As an initial matter, defendants contend that plaintiff's complaints of offensive jokes and comments specifically directed at her are the only alleged incidents of harassment properly before the court. That contention is incorrect.

First, since the court must consider plaintiff's entire working environment, evidence of Asch's conduct toward other women in the working environment is admissible to prove her claim. See Hurley, 174 F.3d at 110; Bartholomew, 1995 WL 907897, at *4-5. Plaintiff need not have personally witnessed the harassment of other women. See Hurley, 174 F.3d at 110. Plaintiff has filed an affidavit from Julie Kaye, another former RVC employee, that recounts allegedly harassing conduct by Asch toward the Kaye, as well as harassing conduct toward other women observed by Kaye. See Appendix to Plaintiffs' Opposition, Ex. 5, Affidavit of Julie Kaye.

Second, although plaintiff must exhaust available administrative remedies, see Clockdile v. New Hampshire Department of Corrections, 245 F.3d 1, 3 (1st Cir. 2001), The court may consider all allegations "reasonably related to and [that] grow[] out of the discrimination complained of to the agency." Clockdile, 245 F.3d at 6; see Powers v. Grinnell Corp., 915 F.2d 34, 39 (1st Cir. 1990); Preyer v. Dartmouth College, 968 F. Supp. 20, 24 (D.N.H. 1997). Plaintiff is not required to set forth in her administrative claim every alleged incident or fact that may establish her claim. See, e.g., Powers, 915 F.2d at 38 ("An administrative charge is not a blueprint for the litigation to follow."). Here, plaintiff's administrative claim before the New Hampshire Commission for Human Rights clearly included complaints of being "forced to work in a sexually hostile working environment created by . . . Joseph Asch." See Appendix to Defendants' Motion for Summary Judgment, Ex. 1. Plaintiff's complaints of "staring and leering" by Asch and his alleged conduct toward other women are reasonably related to her hostile

8

work environment claim, and, accordingly, are properly before the court.

Next, defendants argue that even if all of plaintiff's allegations are considered, the conduct of which she complains was not sufficiently severe or pervasive to be actionable, nor was it based on gender. Moreover, they claim RVC's response to plaintiff's complaints was sufficiently reasonable to relieve RVC and its general partner of any direct liability.

1. Severe or Pervasive

Defendants first contend that "[t]here is nothing at all about the lipstick comment and kisses on the cheek which was 'sexual,' 'hostile,' or 'oppressive.'" Defendants' Memorandum in Support of Summary Judgment ("Def. Mem.") at 15 n.14. Plaintiff, however, states in her deposition that she did not perceive the kisses as innocent kisses of greeting, see Appendix to Defendants' Motion for Summary Judgment, Ex. 3, Deposition of M.C. Sheppard ("Sheppard Depo.") at 42-43, 125-26, and that it

was the manner in which Asch made the lipstick comment, not simply the words used, that amounted to harassment, see Sheppard Depo. at 80-81. The court cannot resolve that factual dispute on this record. Of course, "sex-based harassment that is not overtly sexual is nonetheless actionable under Title VII . . . ." O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001).

Defendants also argue that Asch was not at RVC frequently enough for his behavior to create an actionable hostile work environment. They specifically rely on the fact that he was in France for all but four of the last sixty-five days of plaintiff's employment. However, plaintiff points out that Asch testified in his deposition that he was at RVC approximately every other day in May, June, July, August, and September. See Appendix to Plaintiffs' Objection to Summary Judgment (document no. 53), Ex. 2 at 49, 66 ("J. Asch Depo."). Accordingly, there is also a factual dispute about the frequency of Asch's presence

10

at RVC (and consequently the "pervasiveness" of his allegedly harassing behavior).

Finally, defendants say they are entitled to summary judgment because the behavior about which plaintiff complains is "far less significant than [that] found insufficiently 'severe and [sic] pervasive' as a matter of law in other cases." Def. Mem. at 16. After reviewing several precedents, defendants conclude that "[b]y comparison . . ., Asch's two jokes, lipstick comment, one or two kisses of greeting on the cheek, and supposed 'leering' were not 'pervasive and [sic] severe.'"[4] Def. Mem. at 17-18. But, Defendants' summary of plaintiff's allegations fails to account for her additional complaints about Asch's alleged behavior toward other women and his allegedly constant sexual comments. See e.g. Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997) (finding that for purposes of summary judgment, claims of constant sexual comments sufficient to raise issue of genuine

_____

[4]In their reply to plaintiff's objection (document no. 56), defendants acknowledged that the correct test is "severe or pervasive," not "severe and pervasive," as used in their original motion.

fact); <u>McGuinn-Rowe v. Foster's Daily Democrat</u>, No. CV-94-623-SD, 1997 WL 669965 (D.N.H. Jul. 10, 1997), at *4 ("In addition, although plaintiff did not remember in her deposition every instance of harassment by [defendant] and other of defendant's employees, her general statement that the offensive language was used 'All of the time', [sic] . . . suffices to raise a genuine issue of material fact." (original record citation omitted)). Because there are identified factual disputes about the frequency and sexual nature of Asch's alleged conduct, and because the alleged conduct not addressed by defendants could be significant, summary judgment is not appropriate.

2. Related to Gender

Defendants also argue that they should prevail because the jokes were not based on gender, and because they were told to groups that included both men and women. That argument, however, fails to account for Asch's other alleged conduct, including "leering" at women and/or their breasts while touching himself in

12

a sexually provocative manner, and alleged sexual comments directed at other women. Whether Asch's conduct was gender-based remains a disputed issue of material fact.

### 3. RVC's Response

Defendants claim that even if Asch's conduct is considered severe or pervasive, they are still entitled to summary judgment because RVC had an adequate sexual harassment policy in place, and because when Elizabeth and Joe Asch were informed of the complaints, they "hired an independent investigator, conducted a full investigation, scheduled training for employees, and had [Joe] Asch apologize and immediately stop telling jokes." Def. Mem. at 20; see Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998) (establishing potential affirmative defense for employers). Despite defendants' claims of prompt and reasonable response, however, there remain significant factual disputes precluding summary judgment at this time.

13

First, plaintiff contends that she was never provided a copy of RVC's sexual harassment policy, and in any event, she complied with the policy as written. If RVC did in fact fail to provide plaintiff with a copy of the sexual harassment policy, plaintiff's employer(s) cannot rely on it to establish an affirmative defense. See Faragher, 524 U.S. at 808 (finding affirmative defense unavailable when employer "had entirely failed to disseminate its policy against sexual harassment . . . and that its officials made no attempt to keep track of the conduct of supervisors").

Second, plaintiff claims she began complaining to Rob Aubin in July, yet no action was taken until November, when the Asches were finally informed. Because Aubin, RVC's general manager at the time, was responsible for handling complaints, Aubin's failure to act is attributable to plaintiff's employer(s). See O'Rourke, 235 F.3d at 736 (finding no error in jury instruction that employer is liable if supervisor knew, or should have known, of harassment and failed to take prompt action); White, 221 F. 3d

14

at 261-62 (upholding denial of judgment as a matter of law where employee presented evidence employer had notice of harassment because employee complained to supervisors).

Finally, plaintiff points to evidence in the record casting doubt on the adequacy of the "independent investigation" on which defendants so heavily rely. The investigator acknowledges that she was instructed to just gather facts, and not to draw any conclusions. See Appendix to Plaintiffs' Opposition, Ex. 4, Deposition of Andrea Johnstone at 12. Furthermore, Elizabeth Asch claims that it was not RVC's responsibility to decide if sexual harassment had occurred. See id., Ex. 1, Deposition of Elizabeth Asch at 134. Accordingly, it is not clear that the "independent investigation" was, in reality, part of a genuine effort on the part of plaintiff's employer(s) to implement preventive or remedial action. See Faragher, 524 U.S. at 807 (holding employer's response must demonstrate reasonable care to prevent or correct harassment).

15

Several genuine issues of material fact precluding summary judgment on Count I.

B.    Retaliation

"To establish a prima facie case of retaliation, a plaintiff must prove that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse employment action is causally connected to the protected activity."  White, 221 F.3d at 262 (internal citation, quotation marks, and alterations omitted).  Here, plaintiff bases her retaliation claim on her employer's alleged refusal to rehire her, as well as on the counterclaims filed against her by RVC. Defendants do not dispute that plaintiff meets the first prong of the prima facie case, but argue that the alleged adverse effect on plaintiff cannot meet the second prong.

1.    Refusal to Rehire

During the course of a meeting in January of 1999, Elizabeth Asch allegedly told plaintiff that she would not be rehired at the club for any position "because it would be a constant reminder of the charge made against Joe."[5]  Sheppard Depo. at 305.  Defendants do not dispute that the statement was made, but say they are entitled to summary judgment because plaintiff did not fill out an application form, never requested reinstatement, and orally demanded a job that did not exist.  Def. Mem. at 21. Plaintiff, on the other hand, states that she was led to believe and in fact believed the purpose of the meeting was to discuss her return to RVC, that she did not seek specifically ask to be reinstated in her former position because she knew it had been filled, but that she solicited several possible positions,

_____

[5]Defendants' argument that the Asches' statements during the January 1999 meeting are inadmissable under Federal Rule of Evidence ("FRE") 408 is without merit.  Even assuming the meeting was a settlement conference (a fact plaintiff disputes), FRE 408 prohibits the admission of statements for the purpose of proving "liability for . . . the claim" in dispute.  When the alleged statements were made, there was obviously no pending dispute about retaliation.

17

including, but not exclusively, a new position to be created based upon an idea she had. Consequently, a factual dispute exists regarding the purpose and content of the meeting, and the actual reason(s) plaintiff was not rehired.

## 2. Counterclaims

While plaintiff makes a compelling case for the legal viability of her retaliation claim against RVC, based upon its having filed counterclaims against her in this suit that, allegedly, were filed for the purpose of harassing or intimidating her because she complained under Title VII, nevertheless, no action can be taken on the motion for summary judgment as it relates to this count. RVC filed for bankruptcy protection. Therefore, the automatic stay provisions operate to stay this suit as it pertains to RVC. Given the automatic stay, the motion for summary judgment will be regarded as moot, but subject to reassertion if and when the stay is lifted.

18

C. Tortious Interference with Advantageous Relations

Defendants offer several grounds supporting their claim to summary judgment on plaintiff's tortious interference with advantageous relations claim: (1) New Hampshire does not recognize such an action; (2) plaintiff had no relationship with RVC; (3) the Asches are not "third parties" because they were acting as agents for RVC; and (4) Title VII preempts plaintiff's claim. Their arguments are not persuasive on this record.

First, although plaintiff captioned Count IV as "Intentional Interference with Advantageous Relationship" (the phrase used in the First Restatement of Torts), it is clear from the parties' arguments that plaintiff's claim is one for intentional interference with a prospective contractual relationship. See Restatement of Torts (Second) § 766B (1979); see also Restatement of Torts § 766 (1939). New Hampshire has recognized such a tort since at least 1953. See, e.g., Baker v. Dennis Brown Realty, 121 N.H. 640, 644 (1981) (citing Russell v. Crotear, 98 N.H. 68 (1953), and noting that intentional interference with prospective

19

contractual relationship is "an action that has been recognized in this State for some time"); see also id. (citing Restatement of Torts § 766 (1939)).

Defendants' second argument is contradicted by the plain language of the Restatement of Torts (Second), which provides:

> One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

Restatement of Torts (Second) § 766B (emphasis added); see Baker, 121 N.H. at 644 (citing same). To satisfy the relationship element, plaintiff need only prove that she had an "already existing relationship[] [with RVC] that gives rise to a 'reasonable expectation of economic advantage.'" Heritage Home Health, Inc. v. Capital Region Health Care Corp., Civ. No. 95-558-JD, 1996 WL 655793 (D.N.H. Oct. 1, 1996), at *4 (citing

20

Fineman v. Armstrong World Indus., 774 F. Supp. 225, 234 (D.N.J. 1991); cf. Baker, 121 N.H. at 644 (finding offer to purchase real estate sufficient to satisfy prospective relation element). Here, plaintiff previously worked for RVC, and when she left less than two months prior to the meeting, she was encouraged to stay. Her stated reason for leaving RVC was the stress associated with Joe Asch's alleged conduct and RVC's alleged failure to act. Furthermore, it was plaintiff's understanding that the purpose of the meeting was to discuss her return to RVC. It is, therefore, at least arguable that plaintiff reasonably expected to be rehired by RVC, creating a "reasonable expectation of economic advantage." See Heritage Home Health, Inc., 1996 WL 655793, at *4. Since defendants' only discussion of plaintiff's alleged potential relationship rests on the same arguments made in relation to the retaliation claim (i.e., plaintiff only demanded a non-existent job), see, supra, § A1, it is not possible to resolve, on this record, whether RVC would have otherwise rehired plaintiff.

Defendants' contention that the Asches are not "third parties" because they "could only have been acting in their capacity as agents of RVC" is a more complicated issue, but one that also must be resolved in plaintiff's favor on this record. Defendants are partially correct – it is black letter law that an agent is not a third party with respect to his employer. See, e.g., Preyer v. Dartmouth College, 968 F. Supp. 20, 26 (D.N.H. 1997); Birkmaier v. Rockingham Venture, Inc., Civ. No. 94-429-SD, 1995 WL 653119 (D.N.H. Sept. 7, 1995), at * 7. However, defendants' argument is weakened by the exception to the general rule (expressed in the sentence immediately following that cited by defendants) - i.e. agents can be treated as third parties if their actions are "'motivated by actual malice,' where 'actual malice' is defined as 'bad faith, personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff.'" Birkmaier, 1995 WL 653119, at *7 (internal citation and emphasis omitted). Plaintiff claims that the Asches refused to rehire her based upon hostility toward her. Defendants have not addressed

22

the issue of malice.  Accordingly, defendants' contention that the Asches categorically cannot be liable because they were acting as RVC's agents is inadequately supported and thus does not entitle them to summary judgment on Count IV.

Difficulty arises in attempting to determine the relationship between the Asches and RVC, and the business structure of the entities involved.  For example, while officers, shareholders, and employees of a corporation can be liable as third parties under particular circumstances, see, e.g., Harry G. Henn and John R. Alexander, Law of Corporations, § 230, at 608 & n.5 (3d ed. 1983), the exception does not necessarily apply when the "agent" is also the sole shareholder, director, and officer. See Rao v. Rao, 718 F.2d 219, 225 (7th Cir. 1983).  Admittedly scarce New Hampshire precedent, however, suggests that the New Hampshire Supreme Court would still apply the exception even if the "agent" is the sole controller of the corporation.  See Hanger One, Inc. v. Davis Associates, Inc., 121 N.H. 586, 589 (1981) (apparent sole officer of corporation found liable for

23

causing corporation to breach contract). It is also relevant to note that, unlike a corporation, which is a separate entity, a general partner cannot be separated from the partnership. Cf. Dube v. Robinson, 92 N.H. 312, 313 (1943) (distinguishing between corporation and partnership for purposes of counting employees for worker's compensation coverage). In any event, these issues are not raised by the parties, nor are the relevant facts clear on the record, thus precluding summary resolution.

Finally, the court is not persuaded by defendants' argument that Title VII preempts plaintiff's common law claim for tortious interference. Defendants first argue that New Hampshire law precludes the common law remedy. They also argue that Congress intended to preempt all common law remedies.

Under New Hampshire law, "a plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action." Wenners v. Great State Beverages, Inc., 140 N.H. 100, 103 (1995). This limitation is equally applicable when the "legislature" is the United States

24

Congress.  See Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 429 (1st Cir. 1996) (finding common law wrongful discharge claim based on discrimination precluded by Title VII).  For example, it is well-established that Title VII precludes wrongful discharge claims in this state.  See id.  However, unlike wrongful discharge claims which, like Title VII, can only be brought against the employer, see, e.g., Bourque v. Town of Bow, 736 F. Supp. 398, 401 (D.N.H. 1990), plaintiff's tortious interference claim is brought against individuals.  There is no statute providing plaintiff with a remedy against the Asches, as individuals, for intentional interference with her attempts to resume working for RVC.  See Powell v. Catholic Medical Center, 749 D.2d 301, 304 (N.H. 2000) (finding statute at issue "merely preempts the common law claims addressed by the language").  Accordingly, plaintiff's claim is not precluded under New Hampshire law.

With respect to Congressional preemption, defendants' bold statement (without citation) that "Congress has preempted any

25

state common law actions based on activities protected by Title VII" is confusing and unsupported. Surely defendants do not suggest that a refusal by the Asches, as individuals, to rehire plaintiff because she filed a complaint is action "protected by Title VII." Assuming defendants are referring to all common law causes of action based upon circumstances actionable under Title VII, they are probably correct. But Title VII explicitly preserves state actions (without distinguishing between statutory and common law) that are not in conflict with it. See 42 U.S.C. § 2000e-7.[6] Plaintiff cannot sue the Asches, individually, under Title VII, so there would appear to be no bar to bringing common law claims against them.

---

[6]Section 2000e-7 states in its entirety:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a Sate, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

26

D.    Enhanced Damages and Loss of Consortium

Defendants' only argument for summary judgment on Counts V and VI is that the relief requested is contingent upon plaintiff's success on a common law claim.  Because summary judgment on Count IV is not appropriate on this record, Counts V and VI survive as well.


## Conclusion

On this record, genuine disputes of material fact remain, precluding summary judgment.  As the parties are fully aware, RVC filed for bankruptcy protection.  This order does not, therefore resolve any issue relative to RVC; the case against RVC is stayed pursuant to the bankruptcy code's automatic stay provisions.  In all other respects, defendants' motion for summary judgment (document no. 51) is denied.

27

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 28, 2001

cc:  Lauren S. Irwin, Esq.
     William E. Whittington, IV, Esq.
     Joseph F. Daschbach, Esq.