**Rufus W. SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–99–00509–CR.**

Court of Appeals of Texas,
San Antonio.

March 8, 2000.

Rehearing Overruled March 21, 2000.

Norman Whitlow, Law Office of Norman T. Whitlow, Kerrville, for appellant.

Ronald L. Sutton, Dist. Atty., Junction, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

**OPINION**

Opinion by: SARAH B. DUNCAN, Justice.

On February 25, 2000, the State filed a motion to correct the facts in this court's original opinion. We grant the motion, withdraw the opinion issued on February 16, 2000, and substitute the following opinion in its stead.

Rufus W. Smith appeals the trial court's judgment finding him mentally incompetent to stand trial. We hold the trial court

erred in failing to allow Smith an opportunity to be heard before he was found incompetent to stand trial, reverse the trial court's judgment, and remand the cause.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Smith was indicted for murder. Before the case went to trial, however, Smith was found incompetent to stand trial and committed to a state hospital. Since 1988, the state hospital has repeatedly indicated Smith is competent;[1] the State has requested a competency hearing; and, in an unusual twist of roles, the State has argued Smith is incompetent to stand trial, while Smith has defended his competency. Subsequent to each hearing, Smith has been found incompetent to stand trial and recommitted to a state hospital.

In keeping with this established procedure, the clinical director for the state hospital at which Smith is being treated recently notified the trial court of Smith's pending release on April 2, 1999, and she and Smith's treating physician indicated it was their opinion Smith was competent to stand trial. Once again, the State objected to the director's report and requested a competency hearing. At the hearing, which was held on May 10, 1999, the State asked the trial court to take judicial notice of Smith's six previous incompetency findings and *Manning v. State,* 730 S.W.2d 744 (Tex.Crim.App.1987), which places the burden on the State to prove Smith's competence beyond a reasonable doubt. *Id.* at 748. Because the State brought no evidence of Smith's competence, the trial court found the State failed to meet its burden of proof, precluded Smith from presenting any evidence, directed the jury to find Smith incompetent, and committed Smith to the state hospital for another twelve months.

### DUE PROCESS

■ Smith argues he was denied his right to due process because the trial court directed a verdict without giving him the

opportunity to be heard or bring evidence of his competence, thus implicating his right to proceed to a trial on the merits. We agree.

■ Both the state and federal constitutions prohibit the State from depriving an individual of his life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19; TEX.CODE CRIM. PROC. ANN. art. 1.04 (Vernon 1977). "Among the constituent components of due process are the right to notice and a hearing, including the opportunity to be heard at a meaningful time, in a meaningful manner." *Smith v. State,* 912 S.W.2d 268, 270 (Tex.App.—San Antonio 1995, no pet.) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Due process protections attach when "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). However, an injury to reputation alone is not sufficient to trigger an individual's right to due process. *See Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Rather, a previously recognized right or status must be "distinctly altered or extinguished" by the government's actions in order for the individual to assert his due process rights. *Id.*

■ Here, the trial court allowed Smith to be found incompetent without giving him the opportunity to be heard. In so doing, the court tagged Smith with the stigma of incompetency. *Constantineau,* 400 U.S. at 437, 91 S.Ct. 507; Bruce J. Winnick, *The Side Effects of Incompetency Labeling and the Implications for Mental Health Law,* 1 PSYCHOL., PUB. POL'Y, & L. 6, 25 (1995). This stigma alone was insufficient to trigger Smith's due process rights. However, a finding of incompetency to stand trial has been found to be a valid reason for delaying a trial. *See Dickey v.*

---

1. The state hospital found Smith competent to stand trial in 1989, 1992, 1994, 1996, 1997, and 1999, and incompetent to stand trial in 1990, 1991, 1993, 1995, and 1998.

*Florida,* 398 U.S. 30, 48, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Love v. State,* 909 S.W.2d 930, 947 (Tex.App.—El Paso 1995, pet. ref'd); *Burgett v. State,* 865 S.W.2d 594, 597 (Tex.App.—Fort Worth 1993, pet. ref'd); *see also United States ex rel. Little v. Twomey,* 477 F.2d 767, 770–73 (7th Cir.) (delay of sixteen months not denial of defendant's right to speedy trial when defendant had been found incompetent to stand trial), *cert. denied,* 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973); Winnick, 1 PSYCHOL., PUB. POL'Y, & L. at 25 ("An adjudication that a criminal defendant is incompetent to stand trial ... justifies deprivation of what otherwise would be the defendant's Sixth Amendment right to speedy trial."). Thus, a finding of incompetency impacts a criminal defendant's Sixth Amendment right to a speedy trial. *See* Winnick, 1 PSYCHOL., PUB. POL'Y, & L. at 25–26. In short, the trial court's order finding Smith incompetent to stand trial not only stigmatized Smith but also impacted his recognized right to a speedy trial. Therefore, we hold Smith had a due process right to be heard before being found incompetent. *See Paul,* 424 U.S. at 711–12, 96 S.Ct. 1155. Because Smith was not given this opportunity, we reverse the trial court's judgment finding Smith incompetent to stand trial and committing him to a mental health facility and remand the case for a new competency hearing.[2]

---

**2.** Although Smith failed to raise the issue in his brief, there is also a serious question concerning whether he was denied due process by the trial court's failure to hold a hearing on the issue of whether Smith should have been recommitted to a mental health facility after the jury found him incompetent to stand trial. We note that under the Texas Code of Criminal Procedure, a trial court may civilly recommit a defendant no longer under an order of commitment if he is found to be incompetent, TEX.CODE CRIM. PROC. ANN. art. 46.02, § 8(e) (Vernon Supp.1999), but the defendant is entitled to a hearing, including the opportunity to bring evidence, before he is recommitted. TEX. HEALTH & SAFETY CODE ANN. §§ 574.066, 593.047 (Vernon 1992); *see* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19; TEX.CODE CRIM. PROC. ANN. art. 1.04 (Vernon 1977); *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *Toliver v. State,* 638 S.W.2d 122, 123 (Tex. App.—Corpus Christi 1982, no pet.); *see Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society."); JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW 543 (4th ed.1991).