Hillsborough-northern judicial district
No. 2006-036

### THE STATE OF NEW HAMPSHIRE

v.

### ADAM R. LAVOIE

Argued: January 11, 2007
Opinion Issued: May 25, 2007

*Kelly A. Ayotte*, attorney general (*Susan G. Morrell*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Adam R. Lavoie, appeals an order of the Superior Court (*Lewis*, J), following an evidentiary hearing, finding him "dangerous to himself . . . or others" within the meaning of RSA 135:17-a, V (2005) (amended 2006) and ordering that he remain in custody for up to ninety days to determine whether involuntary treatment would be appropriate. We affirm.

The following facts are supported in the record or are not disputed by the parties. On October 14, 2004, the defendant was indicted for attempted aggravated felonious sexual assault. *See* RSA 629:1 (Supp. 2006); RSA 632-A:2 (Supp. 2006). On the same day, the defendant was charged by information with committing the crime of indecent exposure. *See* RSA 645:1 (Supp. 2006). The defendant's counsel raised the issue of his competency to stand trial. After a hearing, the court found that the defendant was incompetent to face the pending criminal charges and that he could not be restored to competency within one year. *See* RSA 135:17-a, I (2005). The court then scheduled a hearing to determine, pursuant to RSA 135:17-a, V, whether the defendant was "dangerous to himself . . . or others." Following the hearing, the court ruled that the State had met its burden of proof and ordered that the defendant remain in custody, "by continuation of [his] present bail conditions," for a period not exceeding ninety days from the date of the court's order, "to be evaluated for the appropriateness of involuntary treatment pursuant to RSA 171-B:2."

On appeal, the defendant argues that the trial court erred in failing to apply the proper definition of dangerousness and the proper standard of proof. The defendant also argues that we should reach the merits of his appeal notwithstanding that his ninety-day commitment has ended. The State contends that the defendant's claims are moot, but agrees that we should decide the issues raised in this appeal because they "will be raised

repeatedly in the future." Given the parties' agreement on this point, we turn to the merits of the defendant's claims.

The defendant first argues that the trial court erred in interpreting the term "dangerous" in RSA 135:17-a, V. The statute provides, in relevant part:

> If the court has determined that the defendant has not regained competency, and the court determines that he or she is dangerous to himself or herself or others, the court shall order the person to remain in custody for a reasonable period, not to exceed 90 days, to be evaluated for the appropriateness of involuntary treatment pursuant to RSA 135-C:34 or RSA 171-B:2.

RSA 135:17-a, V.

The statute itself does not define "dangerous," nor did the trial court explicitly do so in its order. The defendant notes that while this appeal was pending, we decided *In the Matter of B.T.*, 153 N.H. 255, 260-61 (2006), in which we interpreted the phrase "danger to himself or to others" in RSA 135-C:34 (2005) by reference to a similar standard in RSA 135-C:27 (2005). He argues that "[b]ecause in *B.T.* this Court found it necessary to define the term 'dangerousness' by reference to other relevant statutes, and applied that definition retroactively to the parties in *B.T.* itself, this Court must here do the same." He further argues that because the trial court did not apply the proper definition, its finding of dangerousness must be vacated.

The State agrees that "it is sound to apply the definition of dangerousness found in RSA 135-C:27, II, the involuntary emergency admission (IEA) statute, to RSA 135:17-a, V, as this Court applied it to RSA 135-C:34 in [*B.T.*]." It argues that, although the trial court did not "specifically refer" to the definition of dangerousness in RSA 135-C:27, II, it nevertheless did apply the proper criteria. It therefore concludes that "[s]ince this is essentially the same standard that the defendant now urges this Court to adopt, his claim must fail."

■ The parties agree that we should define the phrase "dangerous to himself . . . or others" in RSA 135:17-a, V by reference to RSA 135-C:27 as we did in *B.T.*. Their accord rests upon sound principles of statutory construction, *see Nault v. N & L Dev. Co.*, 146 N.H. 35, 38 (2001), and we so hold. We stated in *B.T.*:

> In establishing the criteria for proving either danger to oneself or danger to others, in the context of an IEA, RSA 135-C:27 requires a threat of, a likelihood of, an attempt to inflict, or an

actual infliction of "serious bodily injury" to oneself or another or a lack of capacity to care for one's own welfare such that there is a likelihood of serious debilitation if admission is not ordered.

*B.T.*, 153 N.H. at 260 (*quoting* RSA 135-C:27). We then concluded that "the criteria for dangerousness under RSA 135-C:27 as stated above apply" to admission under RSA 135-C:34. *Id.* at 261. By the parties' agreement and our holding above, these same criteria also apply to determinations of dangerousness under RSA 135:17-a.

Although the trial court did not apply these precise criteria in making the factual determination of dangerousness, we need not, as the defendant urges, vacate the court's finding. We have held that when a trial court "has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law." *State v. Berry*, 148 N.H. 88, 92 (2002) (quotation omitted). The record shows that under the legal standard articulated herein, a reasonable fact finder necessarily would have reached the same result as did the trial court. Thus, we conclude that we may decide this issue as a matter of law. *See id.*

■ In assessing dangerousness, the trial court noted that it "carefully considered the testimony of James J. Adams, M.D., the chief forensic examiner, and the only witness who testified at the hearing." Dr. Adams, in turn, testified that he "look[ed] to the civil commitment standard" of "potentially serious likelihood of dangerousness" in forming his opinion. He further stated:

> I see no question at all about whether the defendant fits that standard. He's charged with attempted felonious sexual assault against a minor which is considered a heinous crime in our society.... There's ample evidence that he performed what's considered a very serious attempt at a violent crime. He has that history of impulsive behavior, records suggesting, you know, mental disorder and intermittent propensity to out-of-control behavior. I think that's enough, and certainly that's my experience in the probate court that that's ample evidence.

Prior reported incidents that Dr. Adams found "indicative of the defendant's self-control potential," included instances of having "been verbally and physically threatening to the parents: spitting in the mother's face; attempting to strangle her; had assaulted his grandmother; and physically fought with the father periodically." Dr. Adams also noted a report of the defendant trying to get close to his mother while he was

unclothed and "that the mother seemed frightened and the defendant seemed to be aware of that."

We conclude, upon the record before us, that a reasonable finder of fact necessarily would find "a threat of, a likelihood of, an attempt to inflict, or an actual infliction of 'serious bodily injury' to ... another" by the defendant. *B.T.*, 153 N.H. at 260 (*quoting* RSA 135-C:27). Accordingly, we uphold the trial court's finding of dangerousness.

The defendant next contends that the trial court erred in applying the preponderance of the evidence standard of proof to the dangerousness determination under RSA 135:17-a, V. The statute itself does not specify the requisite burden of proof. The trial court reasoned that the preponderance standard was the same burden the State was required to meet regarding the defendant's competency, *see State v. Chen*, 148 N.H. 565, 567 (2002), and was appropriate given that the result of a finding of dangerousness would do no more than keep the defendant in some form of custody for a reasonable period not longer than ninety days to evaluate the appropriateness of involuntary treatment. The court also noted that "[s]ignificantly, if [involuntary admission] proceedings are instituted pursuant to RSA 171-B, the standard of proof at that time would be clear and convincing evidence."

In matters of statutory interpretation, we are "the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Leonard*, 151 N.H. 201, 203 (2004) (quotation omitted). We review questions of constitutional law *de novo*. *See State v. Hall*, 154 N.H. 180, 182 (2006).

As a matter of statutory interpretation, we cannot say that the trial court erred in applying the preponderance standard. A proceeding under RSA 135:17-a is civil in nature. "In a civil action the burden of proof is generally on the plaintiff to establish its case by a preponderance of the evidence." *Hancock v. R.A. Earnhardt Textile Mach. Div.*, 139 N.H. 356, 357 (1995) (quotation omitted). Absent legislative direction to the contrary, we conclude that the legislature intended the general civil burden of proof to apply.

The defendant nevertheless argues that the trial court's finding of dangerousness must be vacated because the New Hampshire and Federal Constitutions require the proponent in a civil commitment proceeding to prove its case by clear and convincing evidence. In support, the defendant cites *Addington v Texas*, 441 U.S. 418 (1979), and *In re Sanborn*, 130 N.H. 430 (1988).

In *Addington*, the United States Supreme Court held that due process requires proof by more than a preponderance of the evidence to justify involuntary civil commitment for an indefinite period to a state mental

hospital. *Addington*, 441 U.S. at 419-20, 427. In *Sanborn*, we announced that the burden of proof in civil commitment proceedings pursuant to RSA 135-C:34 is clear and convincing evidence. *Sanborn*, 130 N.H. at 446. Thus *Addington* and *Sanborn* involved actual civil commitments rather than preliminary evaluations and they dealt with detentions for potentially substantially longer periods than the one at issue here. We do not find them dispositive of the issue before us. *Cf. In re Azzarella*, 254 Cal. Rptr. 922, 925, 926 (Ct. App. 1989) (*Addington* and state case "addressing the required standards of proof for longer periods of commitment and commitments to state hospitals" not considered dispositive of "proper standard of proof for a 14-day certification").

Before addressing the defendant's challenge to the standard of proof used by the trial court, we note:

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington*, 441 U.S. at 423 (quotation and citation omitted); *see also Petition of Preisendorfer*, 143 N.H. 50, 54 (1998).

We first address the defendant's claims under our State Constitution, and cite federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). Our due process analysis has three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re Richard A.*, 146 N.H. 295, 298 (2001) (quotation omitted).

The defendant argues that a finding of dangerousness results directly in a loss of liberty and carries a potentially significant social stigma. These are the private interests at stake. We have noted that in the case of civil commitment proceedings, these same interests are "substantial." *Id.*

"Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of

the factfinder turns on both the nature of the private interest threatened and the permanency of the threatened loss." *Santosky v. Kramer*, 455 U.S. 745, 758 (1982); *see also In re Azzarella*, 254 Cal. Rptr. at 926 (noting that in assessing the significance of a deprivation of liberty, "the length of confinement and the reasons for confinement are ... relevant"). As the trial court observed, "the consequence [of a finding of dangerousness] is to do no more than to keep the defendant in a form of custody for a reasonable period not to exceed ninety (90) days to allow for further evaluation in connection with involuntary treatment." Thus, in contrast with the proceedings for involuntary civil commitment for up to five years in *Sanborn*, 130 N.H. at 445, and for an indefinite period in *Addington*, 441 U.S. at 419-20, a determination of dangerousness under RSA 135:17-a, V carries markedly less potential for a loss of liberty. *Cf. Azzarella*, 254 Cal. Rptr. at 926 (observing that deprivation of liberty involved in certification for fourteen-day involuntary treatment was "far less than that imposed upon ... the petitioner in *Addington*").

We similarly conclude that the potential for stigmatization involved in a RSA 135:17-a, V dangerousness determination is less than that at issue in civil commitment proceedings. The *Addington* Court stated: "[I]t is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences ... [that] can have a very significant impact on the individual." *Addington*, 441 U.S. at 425-26. A person subject to a dangerousness determination under RSA 135:17-a, V, by contrast, has already been found by a preponderance not competent to stand trial and has either not regained competency within twelve months or, prior to the expiration of twelve months, has been found to be unrestorable by clear and convincing evidence. *See* RSA 135:17-a, I, III, V. Because the competency determination itself subjects the defendant to social stigmatization, *cf. Smith v. State*, 18 S.W.3d 770, 771-72 (Tex. Ct. App. 2000) (observing that a finding of incompetence to stand trial stigmatized defendant), any additional stigmatization caused by a determination of dangerousness under RSA 135:17-a, V is a matter of degree. *Cf. Jones v. United States*, 463 U.S. 354, 367 n.16 (1983) (noting that "[a] criminal defendant who successfully raises the insanity defense necessarily is stigmatized by the verdict itself, and thus the commitment causes little additional harm in this respect"). Accordingly, we conclude that the private interests at issue are less significantly at risk than they were in *Addington*.

For ease of analysis, we now turn to the third factor, the government's interest. *Richard A.*, 146 N.H. at 298. The *Addington* Court noted the following state interests in civil commitment:

> The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.

*Addington*, 441 U.S. at 426. As a dangerousness determination under RSA 135:17-a, V constitutes a preliminary step in a potential civil commitment—specifically by keeping the defendant in custody for up to ninety days for evaluation for the appropriateness of involuntary treatment—we conclude that the State has the same interests in dangerousness determinations under RSA 135:17-a, V.

Finally, we turn to the second factor in our due process analysis: the risk of an erroneous deprivation of the protected interests under current procedures, "and the probable value, if any, of additional or substitute procedural safeguards." *Richard A.*, 146 N.H. at 298. We assume that the clear and convincing burden of proof urged by the defendant would reduce the risks of erroneous deprivations of the protected private interests. However, "[d]ue process dictates the adoption of a minimum standard of proof that reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Preisendorfer*, 143 N.H. at 54 (quotation omitted). Thus, "the relevant question is whether [the] preponderance standard fairly allocates the risk of an erroneous factfinding between" the defendant and the State. *Santosky*, 455 U.S. at 761.

An erroneous determination that a defendant is dangerous, although undoubtedly serious and highly significant to the defendant himself, would be corrected relatively quickly. The statute provides that a defendant shall be held only for a reasonable period not to exceed ninety days. RSA 135:17-a. Thus, within ninety days, the State will either: (1) discover that the determination of dangerousness was erroneous, and move to release the defendant from custody; or (2) seek to involuntarily admit the defendant pursuant to either RSA 135-C:34 or RSA 171-B:2, at which time it will be required to prove dangerousness by clear and convincing evidence, *see In re Sanborn*, 130 N.H. at 446; RSA 171-B:2 (2002), and its inability to do so will correct the error.

On the other hand, an erroneous failure to find dangerousness could have drastic consequences. The effect of such a failure would be to release into the general public a person who is "dangerous to himself or herself or others," RSA 135:17-a, V. The consequences of such a failure could be tragic and, in the obvious cases of homicide or suicide, irreversible.

■ The *Addington* Court, in concluding that civil commitment to a state mental hospital for an indefinite period must be "justif[ied] . . . by proof more substantial than a mere preponderance of the evidence," reasoned: "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427. For the reasons stated above, we conclude that dangerousness determinations under RSA 135:17-a, V are readily distinguishable from the civil commitment proceedings considered in *Addington*. Here, the possible harm to the State of an erroneous determination is at least as great as the possible harm to a defendant. Because "it cannot be said that either set of interests is so clearly paramount as to require that the risk of error be allocated to one side or the other[,]" we conclude that it does not violate due process "that the risk of error should be borne in roughly equal fashion by use of the preponderance-of-the-evidence standard of proof." *Santosky*, 455 U.S. at 791 (Rehnquist, J., dissenting); *see also Preisendorfer*, 143 N.H. at 55 ("Because proof by a preponderance of the evidence requires that the litigants share the risk of error in a roughly equal fashion, it applies only in situations where the parties' interests are equally important to society." (quotation omitted)).

The State Constitution provides at least as much protection as the Federal Constitution under these circumstances. *See Richard A.*, 146 N.H. at 298; *Addington*, 441 U.S. at 425. We reach the same result under the Federal Constitution as we do under the State Constitution. In summary, the trial court correctly applied the proper burden of proof and came to a sustainable conclusion.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.